## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MICHELLE PERFANOV,**<br>P.O. Box 114<br>**Mount Joy, PA 17552,**<br>                    **Plaintiff,**<br><br>    v.<br><br>**COMMONWEALTH OF**<br>**PENNSYLVANIA,**<br>**PENNSYLVANIA STATE POLICE,**<br>3rd Floor,<br>1800 Elmerton Avenue,<br>Harrisburg, PA 17110,<br><br>and<br><br>**PSP TROOPER RONALD KEITH**<br>**DAVIS, individually and in his**<br>**capacity as a Pennsylvania State**<br>**Police Trooper,**<br>432 West Market Street,<br>Williamstown, PA 17098,<br><br>and<br><br>**COUNTY OF DAUPHIN,**<br>2 South 2nd Street,<br>Harrisburg, PA 17101<br><br>and<br><br>**DAUPHIN COUNTY**<br>**DEPARTMENT OF MENTAL**<br>**HEALTH, AUTISM, and**<br>**DEVELOPMENTAL PROGRAMS,**<br>100 Chestnut Street,<br>Harrisburg, PA 17101 | Case No. 2:25-cv-04772<br><br>**JURY TRIAL DEMANDED** |

and        )
          )
ANDREA KEPLER, in her official )
capacity as Administrator of )
Dauphin County Department of )
Mental Health, Autism, and )
Developmental Programs, )
          )
and )
          )
DAUPHIN COUNTY CRISIS )
INTERVENTION PROGRAM, )
100 Chestnut Street, )
Harrisburg, PA 17101 )
          )
          )
and )
          )
LYNN PASCOA, in her official )
capacity as Mental Health Delegate )
with Dauphin County Crisis )
Intervention Program, )
100 Chestnut Street, )
Harrisburg, PA 17101 )
          )
and )
          )
LAURA VAN SICKLE, in her official )
capacity as a Case Worker with )
Dauphin County Crisis Intervention )
Program, )
100 Chestnut Street, )
Harrisburg, PA 17101, )
          )
and )
          )
LEHIGH VALLEY HEALTH )
NETWORK, INC., )
Cedar Crest and I-78, )
Allentown, PA 18105 )

and )
)
)
**LEHIGH VALLEY HOSPITAL -** )
**SCHUYLKILL,** )
420 South Jackson Street, )
Pottsville, PA 17901, )
)
and )
)
**ALEX MERCADO, M.D.,** in his )
capacity as an Attending Emergency )
Room Doctor at Lehigh Valley Hospital )
– Schuylkill, )
700 E. Norwegian Street, )
Pottsville, PA 17901, )
)
and )
)
**JOHN DOES 1-15,** in their official )
capacity as Pennsylvania State Police )
Troopers, )
)

Defendants.

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

**COMES NOW**, Michelle Perfanov, by and through her attorneys, Matthew M.

Setley, Esquire, Michael C. Wieder, Esquire, and Bitler Law, P.C., hereby files this

complaint against the Commonwealth of Pennsylvania, Pennsylvania State Police,

Trooper Ronald Davis, individually and in his capacity as a Pennsylvania State Police

Trooper, John Does 1-15, in their official capacity as Pennsylvania State Police troopers,

the Dauphin County Department of Mental Health, Autism, and Developmental

Programs, the Dauphin County Crisis Interventions Program, Andrea Kepler, in her

official capacity as Administrator of the Dauphin County Department of Mental Health, Autism, and Developmental Programs, Lynn Pascoa, in her official capacity as the Mental Health Designate at the Dauphin County Crisis Intervention Programs, Laura Van Sickle, in her official capacity as a Case Worker with the Dauphin County Crisis Intervention Program, Lehigh Valley Health Network, Inc., Lehigh Valley Hospital – Schuylkill, and Alex Mercado, M.D. in his official capacity as the attending emergency room physician at Lehigh Valley Hospital – Schuylkill, and in support thereof, avers as follows:

## INTRODUCTION

This case involves the violation of Plaintiff, Michelle Perfanov's civil rights when she was forcefully seized and involuntarily deprived of her liberty without probable cause or due process of law to which she was entitled and protected under the United States Constitution and the Pennsylvania Constitution.

## PARTIES

1.    Plaintiff, Michelle Perfanov is an adult individual and United States Citizen with a mailing address of P.O. Box 114, Mount Joy, PA 17552.

2.    Upon information and belief, Defendant, Pennsylvania State Police ("PSP") is a law enforcement and public safety agency of the Commonwealth of Pennsylvania with a service address of 3rd Floor, 1800 Elmerton Avenue, Harrisburg, PA 17110.

3.    Upon information and belief, Trooper Ronald Keith Davis is an adult individual and United States Citizen who, at all times relevant herein, was employed as a trooper and law enforcement officer with PSP assigned to Troop L, with an office located at 600 Kenhorst Boulevard, Reading, PA 19611. PSP Trooper Ronald Davis has a personal address of 432 West Market Street, Williamstown, PA 17098.

4.    Upon information and belief, the County of Dauphin is a third-class county of the Commonwealth of Pennsylvania with administrative offices located at

5.    Upon information and belief, the Dauphin County Department of Mental Health, Autism, and Developmental Programs ("DCMH") is a department of local county government with an office located at 100 Chestnut Street, Harrisburg, PA 17101.

6.    Upon information and belief, the Dauphin County Crisis Intervention Program ("DCCI") is a services program administrated by DCMH, with an office located at 100 Chestnut Street, Harrisburg, PA 17101.

7.    Upon information and belief, Defendant Andrea Kepler is an adult individual and United States Citizen who, at all times relevant herein, was working in her official capacity as Administrator of DCMH with an office located at 100 Chestnut Street, Harrisburg, PA 17101.

8.    Upon information and belief, Defendant Lynn Pascoa is an adult individual and United States Citizen who, at all times relevant herein, was working in her official

capacity as a Mental Health Delegate with DCCI with an office located at 100 Chestnut Street, Harrisburg, PA 17101.

9.    Upon information and belief, Defendant Laura Van Sickle is an adult individual and United States Citizen who, at all times relevant herein, was working in her official capacity as a Caseworker at DCCI with an office located at 100 Chestnut Street, Harrisburg, PA 17101.

10.   Upon information and belief, Lehigh Valley Health Network, Inc. ("LVHN") is a Pennsylvania non-profit corporation with a registered office located at Cedar Crest and I-78, Allentown, PA 18105.

11.   Upon information and belief, Defendant Lehigh Valley Hospital – Schuylkill ("LVHS") is a Pennsylvania non-profit business, fully owned and operated by LVHN, with a place of business located at 420 South Jackson Street, Pottsville, PA 17901.

12.   Upon information and belief, Defendant Alex Mercado, M.D. is an adult individual and United States Citizen who, at all times relevant herein, was working in his official capacity as an attending emergency room doctor at LVHS located at 700 E. Norwegian Street, Pottsville, PA 17901.

13.   Upon information and belief, there are additional Defendants who, in their official capacities as Pennsylvania State Police Troopers, are responsible for Plaintiff's injuries, and such parties are referred to as "PSP Doe 1-15 Defendants" herein.

Plaintiff will amend her Complaint to state these individuals' true identities once such information becomes available.

## JURISDICTION AND VENUE

14.   This action arises under 42 U.S.C. § 1983 for violation of rights pursuant to the Fourth and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. § 1985 for conspiracy to interfere with constitutional rights. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3). This Court has supplemental jurisdiction over Plaintiff's claims requiring application of Pennsylvania state law pursuant o to 28 U.S.C. § 1367.

15.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because all or a substantial portion of the actions alleged herein occurred within the area of this judicial district.

## FACTUAL BACKGROUND

16.   In early 2023, Plaintiff, Michelle Perfanov ("Plaintiff"), an experienced marketing, communications, and real estate professional, and Defendant, Trooper Ronald Davis ("Davis"), initiated a professional and friendly relationship grounded in a shared interest in developing properties for "off-the-grid," self-sustainable living.

17.   Over time, their interactions evolved beyond professional collaboration.

18.   By the spring and summer of 2023, the relationship became romantic.

19.   Plaintiff and Davis agreed that if they could not sustain a long-term intimate relationship, they would end the romantic aspect amicably and maintain a respectful, professional relationship.

20.   Plaintiff relied upon that understanding in continuing both personal and professional dealings with Davis.

21.   From the outset of the intimate relationship, Davis displayed controlling tendencies inconsistent with the parties' agreement.

22.   In or about June 2023, Davis warned Plaintiff that "if you ever leave me, I will paint you as crazy. I know you are not crazy, but I will do it anyway. I can be a great actor. I know the law. You do not know the law."

23.   Davis boasted that troopers can "flash a badge" without question and claimed Internal Affairs ("IA") was "a joke," stating he had only ever received "a slap on the wrist" and that misconduct could be handled by transfers.

24.   Davis admitted, upon information and belief, to previously signing a false affidavit to keep property when he "first started," acknowledging he "could get in a lot of trouble," but that IA would not uncover it.

25.   Davis told Plaintiff troopers are "trained to manipulate the truth," comparing PSP's internal culture to institutions that move "problem" actors rather than discipline them.

26.   He pressed for access to Plaintiff's phone, asked to track her by GPS, and insisted that, if she dated a trooper, she had to "protect" them and "not start trouble" or debate in public.

27.   Plaintiff became increasingly fearful as Davis's statements and conduct reflected manipulation, surveillance demands, and the expectation of silence and compliance.

28.   Davis misrepresented his marital status; Plaintiff later learned he remained legally married.

29.   Plaintiff made clear she would not continue an intimate relationship with Davis so long as he remained married.

30.   On August 20, 2023, Plaintiff informed Davis that she was ending the relationship.

31.   Plaintiff stated she wished to end things amicably and maintain civility.

32.   Davis responded with an angry, aggressive, and violent outburst, declaring he was "in cop mode now" and could not turn it off.

33.   Davis attempted to intimidate Plaintiff by calling his former PSP barracks at Lykens immediately after the confrontation.

34.   Plaintiff de-escalated, gathered some personal belongings, and left the shared residence.

35.   As she departed, Davis briefly apologized for "taking his issues out on" Plaintiff.

36.   Plaintiff told Davis they would discuss a civil separation the next day after he had time to calm down.

37.   On the morning of August 21, 2023, Davis retaliated by locking Plaintiff out of access to her remaining belongings.

38.   Davis sent belittling texts and emails and threatened retaliation by leveraging his position in law enforcement.

39.   Plaintiff addressed Davis's deception, including his marital status and misrepresentations during the relationship.

40.   Plaintiff further criticized Davis's inability to manage anger and impulses and his efforts to isolate her and damage her reputation.

41.   Upon information and belief, at approximately 10:49 a.m. on August 21, 2023, Davis entered PSP Troop H Lykens Station less than two minutes after Plaintiff had sent a text he later cited out of context.

42.   Upon information and belief, Davis, visibly angry and agitated, seized the original Section 302 paperwork directly from the fax machine at the Lykens barracks, tore it from the machine, and departed with it immediately rather than allowing the barracks to retain or log the document in accordance with standard procedure.

43.   By removing the sole contemporaneous copy of the 302 paperwork, Davis ensured that PSP and DCCI no longer possessed an intact record of the application and warrant as originally issued. This irregular act disrupted the normal chain of

custody and created the very conditions that later resulted in missing pages and incomplete legal documentation at the hospital.

44.   Davis sought out the supervisor on duty and falsely claimed that Plaintiff had threatened suicide and was intellectually disabled, and he cast her as unstable.

45.   The specific text fragments Davis referenced were stripped of context and were sarcastic replies Plaintiff had made during heated exchanges about his statements and conduct.

46.   Testimony later established Davis showed no genuine concern for Plaintiff's well-being; he appeared agitated and angry and changed his story repeatedly to obtain an involuntary commitment.

47.   Troopers at Lykens instructed Davis to stand down and indicated they would perform a wellness check at Plaintiff's listed address.

48.   When troopers went to Plaintiff's address, she was not present.

49.   Davis intensified his efforts, insulting colleagues and, at approximately midday, stating there would be "two dead bodies" if Plaintiff was not found and detained.

50.   Davis also said he did not want to proceed himself because he could be "Blue-Teamed" and "get in trouble," and he sought others to act on his behalf.

51.   When PSP did not act immediately, Davis called the Dauphin County Crisis Intervention Program ("DCCI") directly.

52.   Davis spoke with caseworker Laura Van Sickle ("Van Sickle").

53.   Without verifying information or reviewing the full text conversations, Van Sickle completed a Section 302 Application on Davis's behalf.

54.   In the Application, Van Sickle cited out-of-context text snippets attributed to Plaintiff such as "If I'm supposed to die then so be it," "drive off a cliff," and "go out in style."

55.   The Application marked the box asserting Plaintiff was "unable to care for [her] self," alleging that, without intervention, "death, serious bodily injury or serious physical debilitation would ensue."

56.   There was no allegation or evidence that Plaintiff had attempted suicide, formed a plan to do so, or presented a clear and present danger under 50 P.S. § 7301(b).

57.   Mental Health Delegate Lynn Pascoa reviewed the defective Application and issued a Warrant authorizing transport to "any local emergency department" and, if required, to "any appropriate psychiatric facility."

58.   DCCI faxed the Application and Warrant to Lykens Station.

59.   After the Warrant was generated, Davis went to retrieve it at the Lykens barracks. Witnesses later reported that he appeared visibly angry, ripped the 302 paperwork from the fax machine, and left with it in agitation rather than following standard chain-of-custody procedures.

60.   By seizing and carrying away the only copy of the original 302 paperwork, Davis ensured that neither PSP nor DCCI maintained a contemporaneous, intact record of

the application and warrant as issued. This omission created confusion downstream and contributed to missing page(s) later documented in hospital records.

61.    Davis did not provide his purported text "proof" to DCCI for more than six hours.

62.    Davis retrieved the faxed Warrant from Lykens Station and announced he would "start looking for" Plaintiff himself.

63.    PSP personnel did not prevent Davis from acting upon the Warrant, despite his off-duty status and personal involvement.

64.    Davis enlisted the aid of acquaintance Kerry Teter ("Teter") and traveled to the Weiser State Forest—Greenland Tract—where Plaintiff had earlier indicated she would be working outdoors.

65.    Plaintiff was seated quietly by a picnic table with her laptop, showing no indications of self-harm or threats to others.

66.    As Davis and Teter approached, Plaintiff made no threatening moves.

67.    Davis, off duty and in plain clothes, jumped from Teter's moving vehicle and sprinted toward Plaintiff.

68.    While Plaintiff instructed him to stay away, Davis shouted, "You are coming with me."

69.   Without any explanation or lawful basis, Davis grabbed Plaintiff in a wrestling-style hold, crushing her lungs against her legs and lifting her off the ground against her will.

70.   Davis carried Plaintiff several yards and slammed her against a vehicle, further impairing her breathing.

71.   Plaintiff repeatedly told Davis she could not breathe.

72.   Davis placed Plaintiff in a chokehold, forced her hands behind her back, and pressed his full weight into her rib cage, preventing Plaintiff from breathing.

73.   Plaintiff desperately attempted to understand why she was being seized, asking Davis to explain and to look her in the eye.

74.   Instead of answering, Davis escalated the force, ultimately slamming Plaintiff head-first into the ground and landing on top of her body.

75.   Plaintiff suffered cracked ribs, a cracked pelvis, injuries to her elbow and knee, and multiple abrasions and contusions to her head and body.

76.   During a portion of the encounter, Davis directed Teter to record video using Teter's phone; the initial assault was not captured because Teter believed he was recording when he was not.

77.   On the video, Davis displayed no concern for Plaintiff's condition and instead asked, "Are you getting this?" as she struggled to breathe.

78.   Plaintiff pleaded again that she could not breathe and asked Teter what was happening; Teter responded they were "there to get [her] help."

79.   Davis continued to restrain Plaintiff forcibly without explanation, alternating between pinning her against the vehicle and restraining her on the ground.

80.   Davis then pulled out his phone and stated on the call, "Hurry, she's resisting arrest," the first time he referenced any purported basis for the seizure.

81.   Additional PSP troopers ("PSP Doe 1–15") arrived within minutes.

82.   Upon arrival, Trooper Donald Davis (distinct from Ronald Davis) ran at Plaintiff and forcefully took custody by slamming her head against the patrol car multiple times while handcuffing and searching her.

83.   At no time did Plaintiff exhibit suicidal ideation or pose a danger to herself or others.

84.   Plaintiff repeatedly asked why she was being detained and demanded to see the Warrant; her requests were ignored.

85.   The troopers spread out, searched the area, and, at points, joked among themselves and smoked while Plaintiff remained restrained.

86.   Trooper Giacobbi ("Giacobbi") interacted directly with Plaintiff; when she pressed for an explanation, he stated he was "not quite sure—maybe suicide," and added that if there is a Warrant, they "have to take [her] in."

87.    Hospital CCR notes made at approximately 4:45 p.m. and 5:30 p.m. confirm that the 302 packet presented for Plaintiff's admission was incomplete and missing required page(s). Staff specifically recorded that the paperwork was "not fully valid" at the time of admission.

88.    Subsequent notations in hospital records further confirm that staff attempted to "cover" the defect by later obtaining substitute paperwork or signatures after Plaintiff was already detained. One entry reflects that Defendant Mercado's signature was affixed after-the-fact to "complete" the file, though no contemporaneous examination or lawful recommitment had occurred.

89.    These records demonstrate not only that Plaintiff was unlawfully detained on the basis of incomplete or invalid paperwork, but also that LVHS staff viewed such irregularities as a routine matter to be corrected post hoc, reflecting an institutional custom and practice of processing unlawful or incomplete commitments.

90.    Plaintiff protested that this was a "domestic dispute" turned frame-up by her ex-boyfriend, a trooper, and requested that they review Teter's video showing the assault.

91.    Around this time, Giacobbi noticed irregularities and called Corporal Goodman ("Goodman"), telling Plaintiff to "sit tight" and that he would get to the bottom of it.

92.    Plaintiff observed Ronald Davis sifting through her belongings at the picnic table and laughing with Teter.

93.   Goodman arrived at approximately 2:00 p.m., documented Plaintiff's visible injuries, and reviewed Teter's video.

94.   Ronald Davis attempted to search Plaintiff's vehicle "for keys."

95.   Plaintiff expressly denied consent for Ronald Davis to search her car and stated she would allow Giacobbi to retrieve items she needed.

96.   Giacobbi told Ronald Davis that he did not have consent and that Giacobbi would handle retrieval from Plaintiff's car.

97.   Records reflect that Ronald Davis reported himself on desk/back duty from 1:30 p.m. to 6:30 p.m. that day, despite his personal involvement in the seizure.

98.   At or about 2:06–2:08 p.m., Ronald Davis texted Plaintiff's friend Carrie Hoy, "I got her, she's safe," indicating Plaintiff had been taken from the scene.

99.   PSP Doe Defendants transported Plaintiff out of the area on a long back-road route to Lehigh Valley Hospital – Schuylkill ("LVHS").

100. Troopers told Plaintiff they were taking her to a different county "for [her] protection" because Ronald Davis knew too many people in Dauphin County.

101. The route and timeline were inconsistent with the approximately 35-minute travel time to LVHS; Plaintiff did not reach triage until about 3:32 p.m.

102. At intake, troopers presented Plaintiff as a "302." Plaintiff denied suicidal ideation and stated she had been assaulted and framed by Davis in retaliation for ending the relationship.

103. In private interactions, Troopers commented on Plaintiff's appearance (e.g., "sticks and dirt in [your] hair") while she remained in restraints, which Plaintiff attributed to being assaulted outdoors.

104. Troopers stayed with Plaintiff, at times making light conversation and acknowledging pension motivations and the "motions" of the process.

105. Staff initially suggested there were issues with the Warrant and that "this shouldn't stick," and indicated they would "go outside" to resolve missing pages.

106. Around 4:21 p.m., Plaintiff underwent an EKG; staff noted an elevated/"fluttery" heart rate, which Plaintiff attributed to the assault and stress.

107. At approximately 4:35 p.m., hospital crisis staff contacted DCCI and reported missing Warrant pages and irregularities; DCCI confirmed Ronald Davis had not notified them that Plaintiff was found or transmitted complete documentation.

108. During this period, DCCI spoke with Ronald Davis, who, now purporting to be on duty, offered yet another narrative—that Plaintiff had attacked an on-duty officer—omitting the initial assault by him.

109. Hospital CCR notes made at approximately 4:45 p.m. and 5:30 p.m. reflect that the 302 paperwork arrived incomplete and missing page(s). Staff recorded that the legal packet was 'not fully valid' at the time Plaintiff was admitted.

110. Later notations further confirm that staff attempted to 'cover' the defect by sending or receiving pages after the fact, and that Dr. Mercado's later signature was used to 'complete' the paperwork only once Plaintiff was already detained.

111. These notations and practices show not only that Plaintiff's detention proceeded on defective paperwork, but also that LVHS and its staff treated such irregularities as routine, processing incomplete 302s and backfilling paperwork afterward in order to continue detentions.

112. Following those communications, crisis staff indicated that a 302 would proceed.

113. At approximately 5:11 p.m., Plaintiff was read rights and signed certain hospital paperwork unrelated to mental health findings (e.g., slip and fall acknowledgment).

114. Plaintiff requested access to her phone to contact her best friend, having been denied communication for hours despite the 302 rights form indicating immediate calls upon arrival.

115. Plaintiff did not receive her first phone call until after about 6:30 p.m., at which point she sent a brief message to friend Carrie Hoy documenting the timestamp and asking her to answer a "private" number.

116. Around the same time, Ronald Davis contacted DCCI stating he had been "overwhelmed" and had "forgotten" to send the rest of the information; he then transmitted materials with conflicting civil/military time stamps.

117. Plaintiff repeatedly requested evaluation and imaging for her injuries as bruising became more pronounced and her right rib visibly protruded.

118. Nursing staff documented injuries; however, Plaintiff did not meet with a physician that evening.

119. Records reflect Dr. Alex Mercado ("Mercado") signed off on a section of Plaintiff's medical documentation at approximately 7:33 p.m., indicating physical clearance and a need for further mental health evaluation, despite the absence of a contemporaneous personal exam.

120. Plaintiff requested chest and abdominal x-rays due to rib pain and concerns for internal injury; imaging was delayed until the following day, August 22, 2023.

121. Later documentation reflected a "rib contusion" and internal injury near the kidneys consistent with blunt force trauma.

122. Plaintiff was held overnight in the ER, denied requests for showering and wound cleaning, and ultimately transferred to LVHS Adult Behavioral Health.

123. On August 23, 2023, Plaintiff met with a treating physician for the first time in the behavioral health setting, described the assault and frame-up by Davis, and consistently denied suicidal ideation.

124. Plaintiff reported that a PSP corporal later told her aspects of the incident had been "handled incorrectly," though locating her had been "difficult."

125. Plaintiff informed the physician that, if verification was needed, the doctor could contact the corporal; she emphasized the conspiracy she believed Davis orchestrated.

126. On August 24, 2023, after further evaluation, the treating physician indicated an intent to "sign [Plaintiff] down" to a voluntary status (201) to facilitate discharge, given the absence of suicidal ideation and the irregularities surrounding the 302.

127. Throughout her involuntary commitment, Plaintiff consistently denied suicidal or homicidal ideation and described the incident as retaliation by Davis for ending the relationship.

128. On August 25, 2023, Plaintiff was discharged.

129. Upon discharge, nursing staff apologized for what had happened and stated that injury photographs and records had not been visible in the system but "showed up" that afternoon.

130. Staff further stated, upon information and belief, that "someone at the hospital" had interfered with or deleted records because Plaintiff was "dating a cop."

131. Plaintiff was released without her phone; Carrie Hoy advised that it had not been included with released personal items, and had been documented separately with no date and no time-stamp.

132. In the days following, PSP personnel, including Goodman and Trooper Short, appeared at a location associated with Plaintiff seeking additional follow-up.

133. In the interim and thereafter, the Teter video depicting part of the Weiser State Forest incident was disseminated widely by television and internet media, showing portions of the assault and describing Plaintiff's unlawful involuntary commitment.

134. At all relevant times, Davis acted, or purported to act, under color of state law and within the actual or apparent scope of authority as a PSP trooper, despite being off duty during substantial portions of the incident.

135. PSP Doe 1–15, acting under color of law, ratified and completed Plaintiff's unlawful seizure at the Weiser site and her transport, despite the absence of probable cause.

136. DCCI, by and through Van Sickle and Pascoa, participated in joint activity with law enforcement by completing the defective 302 Application and issuing the Warrant without adequate investigation, verification, or probable cause.

137. LVHN/LVHS personnel, including Dr. Mercado, relied on mischaracterized out-of-context text fragments and a facially irregular Warrant rather than independent clinical findings to continue Plaintiff's deprivation of liberty.

138. As a direct and foreseeable result of Defendants' acts and omissions, Plaintiff sustained bodily injuries (including cracked ribs and pelvis, contusions, abrasions, and internal injury), severe pain and suffering, emotional trauma and distress, loss of enjoyment of life, reputational harm, invasion of privacy, and financial damages.

139. Plaintiff's statements throughout, contemporaneous records, and third-party testimony consistently reflect that she did not threaten self-harm, did not pose a danger to herself or others, and was targeted by Davis to exert control after she ended the relationship.

140. Defendants' joint actions caused the unreasonable seizure of Plaintiff's person and deprivation of her liberty without probable cause or due process of law.

## COUNT I – VIOLATION OF PLAINTIFF'S RIGHTS PURSUANT TO THE FOURTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION

## UNREASONABLE SEIZURE OF PLAINTIFF'S PERSON AND DEPRIVATION OF LIBERTY WITHOUT PROBABLE CAUSE OR DUE PROCESS OF LAW

### *(Michelle Perfanov versus Trooper Ronald Davis, Pennsylvania State Police, and PSP Doe 1-15 Defendants)*

141. Plaintiff incorporates the allegations set forth in the foregoing paragraphs as if fully set forth at length herein.

142. At all times relevant herein, Plaintiff was, by virtue of her citizenship, guaranteed the right, under the Fourth Amendment to the United States Constitution, to be free from unreasonable and unlawful searches and seizures.

143. At all times relevant herein, Plaintiff was, by virtue of her citizenship, guaranteed the right, under the Fourteenth Amendment to the United States Constitution, to withstand the deprivation of liberty without the full, requisite due process of law.

144. Davis traveled to the Greenland Tract of Weiser State Forest, where he knew Plaintiff to be located.

145. Davis, acting under color of law, caused Plaintiff to be unreasonably seized of her person without probable cause.

146. Davis, acting under color of law, chased, tackled, and assaulted Plaintiff in violation of her civil rights.

147. Davis's reliance on the text messages to support his unlawful seizure of Plaintiff was unreasonable.

148. Davis, acting under color of law, unlawfully seized the person of and deprived the liberty of Plaintiff without probable cause or due process of law.

149. At all times relevant herein, Davis acted or purported to act within the full scope and authority of his position as a law enforcement office with PSP.

150. At all times relevant herein, even if without verbalizing such, Davis's actions evinced his actions as performed under the color of law and within the full scope and authority of his position as a law enforcement officer with PSP.

151. At all times relevant herein, PSP knew or should have known that Davis was acting under color of law and purportedly within the full scope and authority of his position as a law enforcement officer with PSP.

152. PSP Doe 1-15 Defendants arrived at the Greenland Tract and took custody of Plaintiff, further effecting her unlawful seizure and deprivation of liberty without due process.

153. PSP and PSP Doe 1-15 Defendants, acting under color of law, did consent and enable Davis to unlawfully seize and detain Plaintiff in violation of her constitutional rights.

154. PSP and PSP Doe 1-15 Defendants, acting under color of law, unlawfully seized the person of and deprived the liberty of Plaintiff without probable cause or due process of law.

155. Pursuant to the Fourth and Fourteenth Amendments to the U.S. Constitution, Davis, PSP, and PSP Doe 1-15 Defendants had a duty and were required to avoid subjecting Plaintiff to the unreasonable seizure of her person without probable cause.

156. Pursuant to the Fourteenth Amendment to the U.S. Constitution, Davis, PSP, and PSP Doe 1-15 Defendants owed a duty and were required to avoid subjecting Plaintiff to unlawful detention and the deprivation of her liberty without due process.

157. Ronald Davis and PSP Doe 1-15 Defendants acted maliciously, oppressively, and in reckless disregard of the Plaintiff's rights.

158. As a direct and proximate result of the acts and/or omissions described above, all perpetrated by Ronald Davis, Pennsylvania State Police, and PSP Doe 1-15

Defendants, Plaintiff suffered the following injuries and damages, all of which may be severe and permanent:

a. Plaintiff's rights under the Fourth Amendment to the United States Constitution were violated;

b. Plaintiff's rights under the Fourteenth Amendment to the United States Constitution were violated;

c. Bodily injury and/or serious bodily injury;

d. Physical pain and suffering;

e. Emotional trauma and distress;

f. Loss of enjoyment of life;

g. Loss of reputation;

h. Invasion of her privacy; and,

i. Financial damage.

159. Plaintiff respectfully requests this Honorable Court to enter judgment in her favor and against Ronald Davis, Pennsylvania State Police, and PSP Doe 1-15 Defendants.

160. Specifically, as detailed in ¶¶20–23, Defendants Davis and the PSP Doe officers used unlawful and excessive force in seizing Plaintiff without presenting her with a warrant, and as further demonstrated in ¶¶42–43, Davis manipulated the underlying warrant paperwork to facilitate that unlawful seizure.

**WHEREFORE**, Plaintiff, Michelle Perfanov, respectfully demands judgment in her favor and against the Defendant(s) named in this Count, and seeks all remedies and damages available and permitted under law, including but not limited to nominal damages, compensatory damages, punitive damages (where permitted), pre- and post-judgment interest, reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provisions of law, equitable and declaratory relief, and all such other relief as this Court deems just, reasonable, and proper.

## COUNT II – VIOLATION OF PLAINTIFF'S RIGHTS PURSUANT TO THE FOURTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION

### ABUSE OF PROCESS

### *(Michelle Perfanov versus Ronald Davis and Pennsylvania State Police)*

161. Plaintiff incorporates the allegations set forth in the foregoing paragraphs as though fully set forth at length herein.

162. Davis knew that the involuntary commitment of Plaintiff would significantly impact her and cause her financial, emotional, physical, and reputational damage.

163. Davis pursued the 302 Application and Warrant solely for the purpose of harassing, embarrassing, delegitimizing, marginalizing, and subjecting Plaintiff to a demonstration of his perceived and actual power over her as a law enforcement officer with PSP.

164. Davis intentionally misrepresented the nature of his relationship with Plaintiff and the text messages and emails he had received and used in order to pursue the involuntary mental health commitment of Plaintiff.

165. At all times relevant herein, Davis acted under color of law to subject Plaintiff to the unreasonable seizure of her person without probable cause and the unlawful detention and deprivation of her liberty without due process.

166. At all times relevant herein, PSP knew or should have known that Davis was acting under color of law and within the actual or purported scope and authority of his position as a law enforcement officer with PSP.

167. Pursuant to the Fourth and Fourteenth Amendments to the U.S. Constitution, Davis and PSP had a duty and were required to avoid subjecting Plaintiff to the unreasonable seizure of her person without probable cause.

168. Pursuant to the Fourteenth Amendment to the U.S. Constitution, Davis and PSP had a duty and were required to avoid subjecting Plaintiff to unlawful detention and the deprivation of her liberty without due process.

169. Ronald Davis and Pennsylvania State Police acted maliciously, wantonly, recklessly, and with a conscious disregard for Plaintiff's rights.

170. As a direct and proximate result of the acts and/or omissions described above, all perpetrated by Ronald Davis and Pennsylvania State Police, Plaintiff suffered the following injuries and damages, all of which may be severe and permanent:

a. Plaintiff's rights under the Fourth Amendment to the United States Constitution were violated;

b. Plaintiff's rights under the Fourteenth Amendment to the United States Constitution were violated;

c. Bodily and/or serious bodily injury;

d. Physical pain and suffering;

e. Emotional trauma and distress;

f. Loss of enjoyment of life;

g. Loss of reputation;

h. Invasion of her privacy; and,

i. Financial damage.

171. Plaintiff respectfully requests this Honorable Court to enter judgment in her favor and against Ronald Davis and Pennsylvania State Police.

172. As further shown in ¶¶42–43, Davis's seizure and removal of the original 302 paperwork perverted Section 302 process to accomplish an ulterior purpose — retaliation and control — rather than to lawfully initiate evaluation, thereby constituting abuse of process.

**WHEREFORE**, Plaintiff, Michelle Perfanov, respectfully demands judgment in her favor and against the Defendant(s) named in this Count, and seeks all remedies and damages available and permitted under law, including but not limited to nominal

damages, compensatory damages, punitive damages (where permitted), pre- and post-judgment interest, reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provisions of law, equitable and declaratory relief, and all such other relief as this Court deems just, reasonable, and proper.

### COUNT III – VIOLATION OF PLAINTIFF'S RIGHTS PURSUANT TO THE FOURTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION
### UNREASONABLE SEIZURE OF PLAINTIFF'S PERSON AND DEPRIVATION OF LIBERTY WITHOUT DUE PROCESS OF LAW

*(Michelle Perfanov versus Dauphin County Department of Mental Health, Autism and Developmental Programs, Dauphin County Crisis Intervention Services, Andre Kepler, Lynn Pascoa, and Laura Van Sickle)*

173. Plaintiff incorporates the allegations set forth in the foregoing paragraphs as though fully set forth at length herein.

174. At all times relevant herein, Plaintiff was, by virtue of her citizenship, guaranteed the right, under the Fourth Amendment to the United States Constitution, to be free from unreasonable and unlawful searches and seizures.

175. At all times relevant herein, Plaintiff was, by virtue of her citizenship, guaranteed the right, under the Fourteenth Amendment to the United States Constitution, to withstand the deprivation of liberty without the full, requisite due process of law.

176. DCMH, by and through agents, employees, or representatives, specifically Andrea Kepler, willfully participated in joint activity, or acted on behalf and upon coercion with PSP or individuals acting under the color of law and within the full

scope and authority of their position, promulgated policies and procedures that allowed for a 302 Application and Warrant to be issued lacking sufficient support and adequate probable cause.

177. Laura Van Sickle, in her official capacity, and within the scope and authority of her position, completed the 302 Application without sufficient support or adequate probable cause or any justifiable basis whatsoever to allow for the unlawful seizure and detainment of Plaintiff through an involuntary mental health commitment,

178. Lynn Pascoa, in her official capacity and within the scope and authority of her position, reviewed and authorized the Warrant to be issued upon the defective 302 Application without sufficient support or adequate probable cause or any justifiable basis whatsoever for the unlawful seizure and detainment of Plaintiff through an involuntary mental health commitment.

179. DCCI, by and through agents, employees, or representatives, specifically Lynn Pascoa and Laura Van Sickle, willfully participated in joint activity, or acted on behalf and upon coercion with PSP or individuals acting under the color of law and within the full scope and authority of their position, by completing and authorizing the 302 Application and Warrant.

180. State Action / Joint Participation. DCCI and DCMH acted under color of state law by exercising statutory authority to receive, screen, and act upon Section 302 petitions, and by working in concert with PSP troopers in real time to authorize

Plaintiff's seizure and transport on the basis of an unverified, personally interested reporter. Their approval and issuance of the 302 Warrant—without independent corroboration and contrary to program safeguards—constituted joint participation with law enforcement in the seizure challenged herein.

181. Causation / Materiality. The Warrant approval, despite missing/irregular documentation and the known bias of the reporter, was a factual and legal cause of the seizure: absent DCCI/DCMH's authorization, PSP troopers would not have detained, transported, or continued to detain Plaintiff. The same omissions and irregularities later persisted at LVHS and were relied upon to extend the deprivation of liberty.

182. Upon information and belief, DCCI failed to adequately and properly train and/or supervise its agents, employees, or representatives so as to avoid the violation of Plaintiff's constitutional rights.

183. Upon information and belief, DCCI knew or should have known that its agents, employees, or representatives would violate Plaintiff's rights without adequate and proper training and/or supervision.

184. The Dauphin County Department of Mental Health Autism, and Developmental Programs, the Dauphin County Crisis Intervention Services, Amdrea Kepler, in her official capacity, Lynn Pascoa, in her official capacity, and Laura Van Sickle, in her

official capacity acted maliciously, wantonly, recklessly, and with a conscious disregard for Plaintiff's rights.

185. As a direct and proximate result of the acts and/or omissions described above, all perpetrated by the Dauphin County Department of Mental Health Autism, and Developmental Programs, the Dauphin County Crisis Intervention Services, Amdrea Kepler, in her official capacity, Lynn Pascoa, in her official capacity, and Laura Van Sickle, in her official capacity, Plaintiff suffered the following injuries and damages, all of which may be permanent:

     a. Plaintiff's rights under the Fourth Amendment to the United States Constitution were violated;

     b. Plaintiff's rights under the Fourteenth Amendment to the United States Constitution were violated;

     c. Bodily and/or serious bodily injury;

     d. Physical pain and suffering;

     e. Emotional trauma and distress;

     f. Loss of enjoyment of life;

     g. Loss of reputation;

     h. Invasion of her privacy; and,

     i. Financial damage.

186. Plaintiff respectfully requests this Honorable Court to enter judgment in her favor and against the Dauphin County Department of Mental Health Autism, and Developmental Programs, the Dauphin County Crisis Intervention Services, Amdrea Kepler, in her official capacity, Lynn Pascoa, in her official capacity, and Laura Van Sickle, in her official capacity.

187. State Action / Joint Participation. DCCI and DCMH acted under color of state law by exercising statutory authority to receive, screen, and act upon Section 302 petitions, and by working in concert with PSP troopers in real time to authorize Plaintiff's seizure and transport on the basis of an unverified, personally interested reporter. Their approval and issuance of the 302 Warrant—without independent corroboration and contrary to program safeguards—constituted joint participation with law enforcement in the very seizure challenged herein.

188. Causation / Materiality. The Warrant approval, despite missing/irregular documentation and the known bias of the reporter, was a factual and legal cause of the seizure: absent DCCI/DCMH's authorization, PSP troopers would not have detained, transported, or continued to detain Plaintiff. The same omissions and irregularities later persisted at LVHS and were relied upon to extend the deprivation of liberty.

WHEREFORE, Plaintiff, Michelle Perfanov, respectfully demands judgment in her favor and against the Defendant(s) named in this Count, and seeks all remedies and

damages available and permitted under law, including but not limited to nominal damages, compensatory damages, punitive damages (where permitted), pre- and post-judgment interest, reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provisions of law, equitable and declaratory relief, and all such other relief as this Court deems just, reasonable, and proper.

## COUNT IV – VIOLATION OF PLAINTIFF'S RIGHTS PURSUANT TO THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION DEPRIVATION OF LIBERTY WITHOUT DUE PROCESS OF LAW

### (Michelle Perfanov versus Lehigh Valley Health Network, Inc., Lehigh Valley Hospital – Schuylkill, and Alex Mercado, M.D.)

189. Plaintiff incorporates the allegations set forth in the foregoing paragraphs as though fully set forth at length herein.

190. At all times relevant herein, Plaintiff was, by virtue of her citizenship, guaranteed the right, under the Fourth Amendment to the United States Constitution, to be free from unreasonable and unlawful searches and seizures.

191. At all times relevant herein, Plaintiff was, by virtue of her citizenship, guaranteed the right, under the Fourteenth Amendment to the United States Constitution, to withstand the deprivation of liberty without the full, requisite due process of law.

192. LVHN, LVHS, acting by and through agents, employees, or representatives, willfully participated in joint activity with state agencies that deprived Plaintiff of her liberty without due process.

193. Upon arriving at the Emergency Room of LVHS, Plaintiff waited more than two hours to be examined by the attending physician – Alex Mercado, M.D. – in violation of the clear provisions of the MHPA.

194. Alex Mercado, M.D., acting under color of law and within the scope and authority of his position as an agent, employee, or representative of LVHN and LVHS, relied solely upon the misrepresented text messages and false statements of Davis in performing his untimely examination of Plaintiff and concluded that Plaintiff was in need of further treatment.

195. State Action / Joint Activity. LVHS and Dr. Mercado became state actors for § 1983 purposes by willfully participating in the Section 302 commitment process with county and PSP personnel, accepting and using county-issued paperwork known to be incomplete or irregular, and continuing Plaintiff's detention on the strength of that state process rather than independent clinical findings.

196. Policy / Custom and Failure to Train. LVHS maintained a custom of proceeding with involuntary holds on incomplete or irregular 302 packets and failed to train or supervise clinical staff to (a) verify that paperwork met statutory prerequisites; (b) disengage from law-enforcement narratives when inconsistent with clinical observation; and (c) correct or halt detention when defects were discovered. This custom was the moving force behind Plaintiff's continued deprivation of liberty.

197. These failures were not isolated oversights but deliberate indifference to the known risk that incomplete or irregular paperwork would be used to justify unlawful detentions, including Plaintiff's.

198. Alex Mercado, M.D. failed to consider Plaintiff's own statements, the lack of any observed suicidal ideations, Plaintiff's denial of suicidal ideations or other conduct on part of Plaintiff, Plaintiff's denial of past or present self-harm, or any other factors independent of the false and misleading statements contained in the 302 Application in support of his conclusion of the need for further involuntary treatment.

199. Alex Mercado, M.D. further failed to consider the standard as set forth in the law to determine whether Plaintiff posed a clear and present danger to herself or others.

200. Alex Mercado, M.D., acted maliciously, wantonly, recklessly, and with a conscious disregard for Plaintiff's rights.

201. As a direct and proximate result of the acts and/or omissions described above, all perpetrated by the LVHN, LVHS, and Alex Mercado, M.D., acting in his official capacity, Plaintiff suffered the following injuries and damages, all of which may be permanent:

    a. Plaintiff's rights under the Fourth Amendment to the United States Constitution were violated;

    b.  Plaintiff's rights under the Fourteenth Amendment to the United States Constitution were violated;

    c.  Bodily and/or serious bodily injury;

    d.  Physical pain and suffering;

    e.  Emotional trauma and distress;

    f.  Loss of enjoyment of life;

    g.  Loss of reputation;

    h.  Invasion of her privacy; and,

    i.  Financial damage.

202. Plaintiff respectfully requests this Honorable Court to enter judgment in her favor and against LVHN, LVHS, and Alex Mercado, M.D.

203. In particular, as reflected in ¶¶42–43 and ¶¶87–89, Defendants coordinated and acted in concert to manipulate, withhold, and later alter the 302 paperwork to justify Plaintiff's detention, thereby evidencing agreement and joint participation in the conspiracy.

**WHEREFORE**, Plaintiff, Michelle Perfanov, respectfully demands judgment in her favor and against the Defendant(s) named in this Count, and seeks all remedies and damages available and permitted under law, including but not limited to nominal damages, compensatory damages, punitive damages (where permitted), pre- and post-judgment interest, reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988

and any other applicable provisions of law, equitable and declaratory relief, and all such other relief as this Court deems just, reasonable, and proper.

## COUNT V – CIVIL CONSPIRACY TO VIOLATE PLAINTIFF'S CIVIL RIGHTS UNDER THE UNITED STATES CONSTITUTION
### *(Michelle Perfanov v. All Defendants)*

204. Plaintiff incorporates the allegation set forth in the foregoing paragraphs as though fully set forth at length herein.

205. At all times relevant herein, Plaintiff was, by virtue of her citizenship, guaranteed the right, under the Fourth Amendment to the United States Constitution, to be free from unreasonable and unlawful searches and seizures.

206. At all times relevant herein, Plaintiff was, by virtue of her citizenship, guaranteed the right, under the Fourteenth Amendment to the United States Constitution, to withstand the deprivation of liberty without the full, requisite due process of law.

207. All Defendants acted with a common purpose, namely, to violate the constitutional rights of Plaintiff in effecting the unlawful and unreasonable seizure of her person and the unlawful deprivation of Plaintiff's liberty without probable cause or due process of law through the involuntary mental health commitment of Plaintiff.

208. Davis took affirmative steps to further this conspiracy by misrepresenting the nature of text messages he received and falsely claiming that Plaintiff was acting erratically in support of his efforts to have Plaintiff unlawfully deprived of her liberty

through an involuntary mental health commitment, when he knew that such information was false and misrepresented.

209. DCMH and DCCI, by and through their agents, employees, or representatives, namely, Andrea Kepler, Lynn Pascoa, and Laura Van Sickle, all acting within the scope and authority of their employment, took affirmative steps to further this conspiracy by completing the 302 Application and the Warrant issued thereupon by relying solely on the misrepresentations and false statements of Davis without any support provided at the time of issuance.

210. DCMH and DCCI, by and through their agents, employees, or representatives, namely, Andrea Kepler, Lynn Pascoa, and Laura Van Sickle, all acting within the scope and authority of their employment, took affirmative steps to further this conspiracy by failing to amend, rescind, properly verify, or cancel the Warrant upon discovery of the lack of support in the misrepresented text messages to have Plaintiff involuntarily committed.

211. PSP and PSP Doe 1-15 Defendants, all acting within the scope and authority of their positions, took affirmative steps to further this conspiracy by enabling Davis to unlawfully seize and detain Plaintiff without probable cause or due process of law.

212. PSP and PSP Doe 1-15 Defendants, all acting under color of law and within the scope and authority of their positions, took affirmative steps to further this conspiracy by seizing Plaintiff without probable cause and depriving her without due process.

40

213. As a direct and proximate result of the acts and/or omissions described above, all perpetrated by the all Defendants stated herein, acting under color of law, Plaintiff suffered the following injuries and damages, all of which may be permanent:

    a. Plaintiff's rights under the Fourth Amendment to the United States Constitution were violated;

    b. Plaintiff's rights under the Fourteenth Amendment to the United States Constitution were violated;

    c. Bodily and/or serious bodily injury;

    d. Physical pain and suffering;

    e. Emotional trauma and distress;

    f. Loss of enjoyment of life;

    g. Loss of reputation;

    h. Invasion of her privacy; and,

    i. Financial damage.

214. Plaintiff respectfully requests this Honorable Court to enter judgment in her favor and against all Defendants.

215. In particular, as reflected in ¶¶42–43 and ¶¶87–89, Defendants coordinated and acted in concert to manipulate, withhold, and later alter the 302 paperwork to justify Plaintiff's detention, thereby evidencing agreement and joint participation in the conspiracy.

WHEREFORE, Plaintiff, Michelle Perfanov, respectfully demands judgment in her favor and against the Defendant(s) named in this Count, and seeks all remedies and damages available and permitted under law, including but not limited to nominal damages, compensatory damages, punitive damages (where permitted), pre- and post-judgment interest, reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provisions of law, equitable and declaratory relief, and all such other relief as this Court deems just, reasonable, and proper.

## COUNT VI – VIOLATION OF PLAINTIFF'S RIGHTS PURSUANT TO THE FOURTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION
### *MONELL[1] ACTION*
### *(Michelle Perfanov v. Dauphin County)*

216. Plaintiff incorporates the allegation set forth in the foregoing paragraphs as though fully set forth at length herein.

217. At all times relevant herein, Plaintiff was, by virtue of her citizenship, guaranteed the right, under the Fourth Amendment to the United States Constitution, to be free from unreasonable and unlawful searches and seizures.

---

[1] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 658, 98 S.Ct. 2018, 2019, 56 L.Ed.2d 611 (1978).

218. At all times relevant herein, Plaintiff was, by virtue of her citizenship, guaranteed the right, under the Fourteenth Amendment to the United States Constitution, to withstand the deprivation of liberty without the full, requisite due process of law.

219. At all times relevant herein, DCMH and DCCI were agencies operated, directed, organized, and existing as agencies of Dauphin County.

220. Defendant Dauphin County is liable under 42 U.S.C. § 1983 for the deprivation of Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments to the U.S. Constitution due to Dauphin County's established custom, practice, or policy in failing to require its agents, employees, or representatives to confirm, verify, or corroborate the information collected.

221. Defendant Dauphin County is liable under 42 U.S.C. § 1983 for the deprivation of Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments to the U.S. Constitution due to Dauphin County's established custom, practice, or policy in allowing it agents, employees, or representatives to approve warrants on Section 302 applications where the agent, employee, or representatives has not confirmed, verified, or corroborated the information provided in support of the application.

222. As a direct and proximate result of the acts and/or omissions described above, all perpetrated by the County of Dauphin, acting under color of law, Plaintiff suffered the following injuries and damages, all of which may be permanent:

a. Plaintiff's rights under the Fourth Amendment to the United States Constitution were violated;

b. Plaintiff's rights under the Fourteenth Amendment to the United States Constitution were violated;

c. Bodily and/or serious bodily injury;

d. Physical pain and suffering;

e. Emotional trauma and distress;

f. Loss of enjoyment of life;

g. Loss of reputation;

h. Invasion of her privacy; and,

i. Financial damage.

223. Plaintiff respectfully requests this Honorable Court to enter judgment in her favor and against the County of Dauphin.

**WHEREFORE**, Plaintiff, Michelle Perfanov, respectfully demands judgment in her favor and against the Defendant(s) named in this Count, and seeks all remedies and damages available and permitted under law, including but not limited to nominal damages, compensatory damages, punitive damages (where permitted), pre- and post-judgment interest, reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provisions of law, equitable and declaratory relief, and all such other relief as this Court deems just, reasonable, and proper.

## COUNT VII – ASSAULT AND BATTERY

### *(Michelle Perfanov v. Ronald Davis)*

224. Plaintiff incorporates the allegations set forth in the foregoing paragraphs as is fully set forth at length herein.

225. After chasing after Plaintiff, Davis, without any justifiable reason or purpose, slammed Plaintiff's body to the ground and proceeded to pin Plaintiff to the ground with the weight of his own body, causing Plaintiff's breathing to be obstructed.

226. Davis's contact with Plaintiff was harmful and offensive.

227. Davis's contact with Plaintiff was intentional in that Davis intended on slamming Plaintiff's body into the ground and pinning her to the ground.

228. Plaintiff never consented to Davis's harmful and offensive contact.

229. As a direct and proximate result of the acts and/or omissions described above, all perpetrated by Ronald Davis, Plaintiff suffered the following injuries and damages, all of which may be permanent:

      a.  Bodily and/or serious bodily injury;

      b.  Physical pain and suffering;

      c.  Emotional trauma and distress;

      d.  Loss of enjoyment of life;

      e.  Loss of reputation;

      f.  Invasion of her privacy; and,

      g.  Financial damage.

230. Although off duty at points, Davis acted—and purported to act—under color of state law and with apparent PSP authority during the encounter, leveraging DCCI/DCMH processes and PSP resources to effectuate the seizure; his assaultive conduct formed part of the same course of state action causing Plaintiff's injuries.

231. Plaintiff respectfully requests this Honorable Court to enter judgment in her favor and against Ronald Davis.

**WHEREFORE**, Plaintiff, Michelle Perfanov, respectfully demands judgment in her favor and against the Defendant(s) named in this Count, and seeks all remedies and damages available and permitted under law, including but not limited to nominal damages, compensatory damages, punitive damages (where permitted), pre- and post-judgment interest, reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provisions of law, equitable and declaratory relief, and all such other relief as this Court deems just, reasonable, and proper.

## COUNT VIII – VIOLATION OF PLAINTIFF'S RIGHTS PURSUANT TO ARTICLE I, § 1
## DEPRIVATION OF PLAINTIFF'S RIGHT TO REPUTATION
### *(Michelle Perfanov v. All Defendants)*

232. Plaintiff incorporates the allegations set forth in the foregoing paragraphs as though fully set forth at length herein.

233. At all times relevant herein, Plaintiff, pursuant to Article 1, § 1 of the Pennsylvania Constitution, was guaranteed the fundamental right to the protection of her personal and professional reputation.

234. All Defendants acted maliciously, wantonly, recklessly, and with a conscious disregard for Plaintiff's rights.

235. Continuing Publication / Stigma-Plus. The existence and dissemination of the 302 packet, associated police notations, and hospital records continue to brand Plaintiff as suicidal and dangerous. These official records are accessed by law-enforcement and medical systems and foreseeably by background-check repositories, producing ongoing reputational harm and collateral consequences, including firearms-rights encumbrances and employment impacts.

236. Causal Link. The reputational injury flows directly from Defendants' misrepresentations, the incomplete paperwork, and reliance on those materials to justify an involuntary commitment that never met statutory criteria.

237. As a direct and proximate result of the acts and/or omissions described above, perpetrated, by All Defendants, Plaintiff has suffered the loss of her professional and personal reputation and financial and emotional damage flowing therefrom.

238. As a direct and proximate result of the acts and/or omissions described above, perpetrated by All Defendants, Plaintiff continues to suffer the loss of her personal

and professional reputation through the existence of official records indicating the unlawful involuntary deprivation of her liberty.

239. As a direct and proximate result of the acts and/or omissions described above, perpetrated by All Defendants, Plaintiff has or will suffer the loss of her constitutional right to bear arms guaranteed under the Second Amendment to the U.S. Constitution.

240. Plaintiff respectfully requests this Honorable Court to enter judgment in her favor and against All Defendants.

**WHEREFORE**, Plaintiff, Michelle Perfanov, respectfully demands judgment in her favor and against the Defendant(s) named in this Count, and seeks all remedies and damages available and permitted under law, including but not limited to nominal damages, compensatory damages, punitive damages (where permitted), pre- and post-judgment interest, reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provisions of law, equitable and declaratory relief, and all such other relief as this Court deems just, reasonable, and proper.

## COUNT IX – DEFAMATION
### *(Michelle Perfanov v. Ronald Davis)*

241. Plaintiff incorporates the allegations set forth in the foregoing paragraphs as though fully set forth at length herein.

242. At various times during the course of the day on August 21, 2023, and thereafter, Davis negligently and maliciously made defamatory remarks, statements, and

comments about Plaintiff, including, but not limited to, Plaintiff's character, Plaintiff's mental health, Plaintiff's professional abilities, and Plaintiff's criminal history.

243. Davis made such defamatory statements to all Defendants and to Teter, directly or indirectly, through verbal, written, and/or transcribed statements, and through the video recording that was released to the public at large.

244. As a direct and proximate result of the defamatory statements made by Davis, Plaintiff suffered the following injuries and damages, all of which may be permanent:

     a. Emotional trauma and distress;

     b. Loss of enjoyment of life;

     c. Loss of reputation;

     d. Invasion of her privacy; and,

     e. Financial damage.

245. Plaintiff respectfully requests this Honorable Court to enter judgment in her favor and against Ronald Davis.

**WHEREFORE**, Plaintiff, Michelle Perfanov, respectfully demands judgment in her favor and against the Defendant(s) named in this Count, and seeks all remedies and damages available and permitted under law, including but not limited to nominal damages, compensatory damages, punitive damages (where permitted), pre- and post-judgment interest, reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988

and any other applicable provisions of law, equitable and declaratory relief, and all such other relief as this Court deems just, reasonable, and proper.

## COUNT X – VIOLATION OF THE FOURTEENTH AMENDMENT (42 U.S.C. § 1983) PROCEDURAL AND SUBSTANTIVE DUE PROCESS – UNLAWFUL DEPRIVATION OF LIBERTY

### *(Michelle Perfanov v. Trooper Ronald Keith Davis; Pennsylvania State Police ("PSP"); PSP Doe 1–15; County of Dauphin; Dauphin County Department of Mental Health, Autism & Developmental Programs ("DCMH"); Dauphin County Crisis Intervention Program ("DCCI"); Andrea Kepler (official capacity); Lynn Pascoa (official capacity); Laura Van Sickle (official capacity); Lehigh Valley Health Network, Inc. ("LVHN"); Lehigh Valley Hospital – Schuylkill ("LVHS"); and Alex Mercado, M.D.)*

246. Plaintiff incorporates by reference all prior paragraphs as if fully set forth herein.

247. The Fourteenth Amendment prohibits the government, and those acting in concert with it under color of state law, from depriving a person of liberty without due process of law (procedural and substantive).

248. Plaintiff was subjected to an involuntary mental health seizure and multi-day confinement, invoking the Pennsylvania MHPA's emergency commitment procedures, Section 302—procedures that, by design, require strict compliance with statutory and regulatory safeguards before liberty may be curtailed.

249. Procedural Due Process (Process that was Due): The MHPA and its implementing regulations require, inter alia: (a) a properly initiated application based on personal knowledge or properly verified information; (b) clear and present

danger standards grounded in recent overt acts or an inability to care for basic

needs; (c) presentation to an appropriate "local" designated facility; and (d) timely

physician examination consistent with § 302(c) and related regulations (55 Pa. Code

§§ 5100.81, 5100.84, 5100.85). Plaintiff pleads these as the process "due" under state

law that, when used to effect a liberty deprivation, defines the minimum

constitutional process owed.

> a.  Procedural Due Process (Process Denied): Defendants denied Plaintiff
>
> this process by:
>
> a. Orchestrating a telephone-driven 302 "by report" from an off-duty,
>
> personally interested ex-boyfriend (Davis), rather than a neutral official,
>
> with DCCI allowing Van Sickle to sign for Davis as "Section A" even
>
> though Pottsville records later mischaracterized it as "police Box B,"
>
> indicating foundational irregularity and confusion at the outset.
>
> b. Issuing a Warrant upon an application that was not supported by
>
> verified facts or recent overt acts satisfying § 7301(b), and that relied
>
> upon clipped, out-of-context text fragments miscast as suicidal threats.
>
> c. Transporting Plaintiff to Pottsville (LVHS) instead of to any "local"
>
> designated facility as customary practice and the Warrant contemplated,
>
> a choice Trooper Giacobbe admitted he made even though Harrisburg,
>
> Camp Hill, or Hershey would be the "usual" ERs for Dauphin County.

d. Proceeding at LVHS on an admittedly incomplete 302 packet—
Pottsville CCR notes reflect missing page(s) and awareness that the 302
was not fully valid when LVHS proceeded; the physician signature used
to "complete" the 302 was applied after transport and upon incomplete
documentation, reflecting manipulation to paper over defects rather than
compliance.

e. Delaying or omitting a timely, personal physician exam while
simultaneously relying on Davis's narrative and a defective Warrant to
continue holding Plaintiff, notwithstanding her consistent denials of
suicidality and contemporaneous evidence of assault-related injuries.

250. Substantive Due Process (Arbitrary & Shocking): Even apart from the
procedural defects, the conduct here was conscience-shocking: an off-duty trooper
leveraged insider status and personal relationships to weaponize the 302 process
against an ex-partner; county actors rubber-stamped his account without
verification; and hospital actors proceeded on known procedural defects to extend
the detention—all while ignoring Plaintiff's injuries and statements, and the obvious
personal conflict. This arbitrary abuse of state power violated substantive due
process.

251. Moreover, as shown in ¶¶42–43, the unchecked ability to manipulate and control the Section 302 paperwork demonstrates arbitrary and capricious treatment inconsistent with the uniform application of the MHPA's safeguards.

252. The irregularities identified in ¶¶87–89, including the hospital's admission of Plaintiff on incomplete paperwork and its effort to 'cover' defects after the fact, confirm that the procedural safeguards required by the MHPA and related regulations were not followed, and that the deprivation of liberty was effected through constitutionally inadequate and manipulated process.

253. State Action / Joint Action: DCCI (a county program) and DCMH acted under color of law; PSP and its troopers are state actors; LVHN/LVHS and Dr. Mercado became state actors by willfully participating in joint activity with DCCI/PSP to detain Plaintiff pursuant to a state commitment scheme despite facial and known invalidities, thereby satisfying § 1983's color-of-law requirement.

254. Causation and Injury: The combined actions of these Defendants caused Plaintiff's involuntary detention from August 21 to 25, 2023; severe physical and emotional injuries; reputational harm; and economic loss.

255. Deliberate Indifference / Recklessness: Defendants each knew, or were deliberately indifferent to, the obvious risk that proceeding on an incomplete/invalid 302 and ex-boyfriend's unverified claims would unlawfully deprive Plaintiff of liberty. DCCI and LVHS admitted awareness of irregularities

(missing page(s), mis-boxed application; need to "cover" procedural defects), yet pressed forward.

256. As further demonstrated by ¶¶42–43 and ¶¶87–89, Defendants concealed and altered the very paperwork required to justify Plaintiff's detention, and these material misrepresentations and omissions were relied upon by officials and hospital staff to Plaintiff's detriment.

**WHEREFORE**, Plaintiff, Michelle Perfanov, respectfully demands judgment in her favor and against the Defendant(s) named in this Count, and seeks all remedies and damages available and permitted under law, including but not limited to nominal damages, compensatory damages, punitive damages (where permitted), pre- and post-judgment interest, reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provisions of law, equitable and declaratory relief, and all such other relief as this Court deems just, reasonable, and proper.

## COUNT XI – VIOLATION OF THE FOURTEENTH AMENDMENT (42 U.S.C. § 1983) DEPRIVATION OF LIBERTY BASED ON FABRICATED EVIDENCE

### (Michelle Perfanov v. Trooper Ronald Keith Davis; PSP Doe 1–15; DCCI (official-capacity defendants Pascoa and Van Sickle); LVHN/LVHS; and Alex Mercado, M.D.)

257. Plaintiff incorporates all prior paragraphs.

258. It violates the Fourteenth Amendment to cause a deprivation of liberty based on fabricated evidence. A § 1983 claim lies where a defendant knowingly

manufactures, falsifies, or materially misrepresents facts to procure a seizure/commitment.

259. Fabrication by Davis: Davis: (a) misrepresented Plaintiff's text messages by stripping sarcasm and context; (b) omitted exculpatory material (his personal role, off-duty status, assaultive conduct, and motive of retaliation after a breakup); (c) inflated risk by asserting suicidality and intellectual disability; and (d) ripped the original 302 from the Lykens fax, left with it in agitation, and later backfilled missing paperwork and time stamps to make the packet appear complete.

260. Adoption/Propagation of Fabrication by DCCI: Van Sickle signed the application "for Davis" based only on Davis's telephone report, without verification or review of the texts; Pascoa issued a Warrant on that basis; both knew they were not eyewitnesses and had no corroboration. Pottsville's notes reflect even they later recognized the 302 was incomplete and attempted to cover the procedural gap.

261. Adoption/Propagation of Fabrication by LVHS/Mercado: Pottsville CCR notes at 4:45 p.m. and 5:30 p.m. reflect awareness that the 302 was missing page(s); Mercado's later signature was used to "finalize" the packet after the fact, coupled with continued reliance on Davis's narrative rather than independent clinical findings—particularly in the face of Plaintiff's consistent denials and visible assault injuries.

262. Materiality and Causation: But for the fabricated and manipulated record (telephone-only report; mis-boxed "police" form; missing page(s); post hoc signature; off-duty ex-boyfriend posing as reporter), Plaintiff would not have been seized, transported out of area, and detained for days.

263. Mens Rea: Davis acted knowingly and with retaliatory motive. DCCI and LVHS/Mercado acted at least with reckless disregard for truth by proceeding on paperwork they knew or suspected was incomplete/invalid and by crediting a biased reporter whose personal role and conduct were apparent.

264. Damages: Plaintiff suffered a wrongful deprivation of liberty; physical injury; emotional trauma; reputational harm; and economic losses.

265. In particular, as described in ¶¶42–43 above, Defendant Davis unlawfully seized and removed the only contemporaneous copy of the Section 302 paperwork from the Lykens barracks fax machine, thereby ensuring that the official record was incomplete and susceptible to alteration.

266. Further, as described in ¶¶87–89 above, LVHS staff admitted that Plaintiff's 302 packet was incomplete and missing pages at the time of her admission, and they attempted to "cover" these defects after the fact by obtaining late paperwork and a post hoc physician's signature. These actions constituted deliberate fabrication and alteration of material evidence used to justify Plaintiff's involuntary detention.

**WHEREFORE**, Plaintiff, Michelle Perfanov, respectfully demands judgment in her favor and against the Defendant(s) named in this Count, and seeks all remedies and damages available and permitted under law, including but not limited to nominal damages, compensatory damages, punitive damages (where permitted), pre- and post-judgment interest, reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provisions of law, equitable and declaratory relief, and all such other relief as this Court deems just, reasonable, and proper.

## COUNT XII – VIOLATION OF THE FOURTEENTH AMENDMENT (42 U.S.C. § 1983) STATE-CREATED DANGER

### (Michelle Perfanov v. Trooper Ronald Keith Davis; PSP Doe 1–15; DCCI (official-capacity defendants Kepler, Pascoa, Van Sickle))

267. Plaintiff incorporates all prior paragraphs.

268. Under the state-created danger doctrine, liability exists when state actors, by affirmative acts, place a plaintiff in a foreseeable, discrete risk of harm that is greater than that which existed before, with deliberate indifference to that risk.

269.     Affirmative Acts:

a. DCCI authorized (via Warrant) the seizure and transport of Plaintiff based solely on the unverified report of an off-duty, personally involved ex-boyfriend, thereby deputizing him through the machinery of a 302;

b. PSP Doe defendants ceded control of the encounter at Weiser to

Davis, allowing him to physically seize and assault Plaintiff and to

orchestrate her transport;

c. DCCI directed transport to "any local ER," but PSP elected

Pottsville, vastly outside local practice, lengthening transport and

keeping Plaintiff in Davis's orbit.

270. Foreseeability & Discrete Victim: Plaintiff, as Davis's ex-partner, was a known, discrete target of his threats (e.g., "paint you as crazy"), and DCCI/PSP were aware he was off duty and personally involved—making harm to Plaintiff foreseeable.

271. Increased Risk: Before state action, Plaintiff was alone, calm, and not suicidal; after DCCI/PSP intervention, Davis was empowered to lay hands on her, escalating to a chokehold, slamming, and fracture—a risk of bodily harm created and amplified by Defendants' decisions and Warrant issuance.

272. Deliberate Indifference: DCCI and PSP disregarded obvious red flags—bias of reporter, off-duty status, missing documentation, transport far outside local practice—and proceeded anyway.

273. Causation & Damages: Defendants' affirmative acts directly caused Plaintiff's injuries and multi-day detention.

274. As further evidenced by ¶¶42–43, Davis's personal seizure and control of the 302 paperwork deliberately removed the safeguards that would have protected

Plaintiff, thereby affirmatively increasing the danger to her liberty and physical safety.

**WHEREFORE**, Plaintiff, Michelle Perfanov, respectfully demands judgment in her favor and against the Defendant(s) named in this Count, and seeks all remedies and damages available and permitted under law, including but not limited to nominal damages, compensatory damages, punitive damages (where permitted), pre- and post-judgment interest, reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provisions of law, equitable and declaratory relief, and all such other relief as this Court deems just, reasonable, and proper.

## COUNT XIII – COMMON LAW FRAUD / FRAUDULENT MISREPRESENTATION & CONCEALMENT

### (Michelle Perfanov v. Trooper Ronald Keith Davis; DCCI (official-capacity defendants Pascoa and Van Sickle); LVHN/LVHS; and Alex Mercado, M.D.)

275. Plaintiff incorporates all prior paragraphs.

276. Elements (Fraud/Fraudulent Misrepresentation): A misrepresentation of material fact; scienter; intent to induce reliance; justifiable reliance by third-party decisionmakers; and damages.

277. Davis's Misrepresentations and Omissions: Davis intentionally misstated the nature of Plaintiff's texts, omitted his personal relationship, concealed his assaultive conduct, and mischaracterized Plaintiff as suicidal and intellectually disabled to

induce DCCI/PSP/LVHS to seize and confine her. He then removed the original

302, appeared agitated, and later backfilled documents to mask defects.

278. DCCI's Misrepresentations/Omissions: Van Sickle signed for Davis without

verification; Pascoa issued a Warrant despite no independent corroboration and

despite the lack of clear and present danger; DCCI failed to disclose to downstream

medical providers that the application was telephone-only from a biased, off-duty

ex-partner and lacked completeness.

279. LVHS/Mercado Misrepresentations/Omissions: With knowledge of missing

page(s) and a not fully valid 302, LVHS/Mercado nevertheless treated the packet as

valid and represented to staff that the legal requisites were met, while omitting the

known irregularities and proceeding to hold Plaintiff.

280. Intended Inducement: Each misrepresentation/omission was made to induce

reliance by others in the chain (troopers, hospital staff, crisis workers, physicians) so

the seizure and detention would continue.

281. Reliance & Causation: DCCI relied on Davis; PSP relied on DCCI;

LVHS/Mercado relied on the packet and Davis's narrative; the chain reaction

caused Plaintiff's seizure and detention.

282. Damages: As pled above.

283. Fraudulent Concealment / Spoliation-Linked Conduct: Plaintiff further pleads

that Defendants engaged in concealment of material facts and tampering with

documentary completeness (e.g., missing 302 pages; after-the-fact signature; disappearance/re-appearance of medical imaging/notes) with intent to obscure the illegality of the detention. Plaintiff reserves sanctions/spoliation remedies and adverse inferences. See Pottsville CCR notes (missing page(s)/recognition of defect).

**WHEREFORE**, Plaintiff, Michelle Perfanov, respectfully demands judgment in her favor and against the Defendant(s) named in this Count, and seeks all remedies and damages available and permitted under law, including but not limited to nominal damages, compensatory damages, punitive damages (where permitted), pre- and post-judgment interest, reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provisions of law, equitable and declaratory relief, and all such other relief as this Court deems just, reasonable, and proper.

## COUNT XIV – MUNICIPAL / POLICY-AND-CUSTOM LIABILITY (42 U.S.C. § 1983) MONELL-TYPE CLAIMS – POLICY, CUSTOM, OR PRACTICE CAUSING DUE PROCESS / SEIZURE VIOLATIONS
### (Michelle Perfanov v. County of Dauphin (by and through DCMH/DCCI)); LVHN/LVHS (as § 1983 "persons" via joint action)

284. Plaintiff incorporates all prior paragraphs.

285. A municipality (and a private entity acting under color of law) is liable under § 1983 when a policy, custom, or practice is the moving force behind a constitutional deprivation.

286. Dauphin County (DCMH/DCCI) Policy/Custom:

a. Telephone-by-report 302s accepted from biased/non-neutral parties (here, an off-duty ex-boyfriend trooper) without verification;

b. "Signing for" third parties (Van Sickle for Davis) to push applications through without personal knowledge;

c. Rubber-stamping Warrants despite lack of clear and present danger; and

d. Non-local transports outside customary designated facilities, undermining statutory safeguards.

These repeated, documented practices demonstrate a custom of short-circuiting MHPA protections, acknowledged in records and in Glace's analysis.

287. LVHN/LVHS Policy/Custom (acting under color of law):

a. Proceeding on incomplete 302 packets (acknowledged missing page(s));

b. Using post hoc physician signatures to "complete" commitments;

c. Continuing detention in the face of known irregularities and absent timely, personal physician evaluation.

These practices, evident in Pottsville CCR notes and the timing/signature irregularities, constitute a policy/custom that caused and prolonged Plaintiff's unconstitutional detention.

288. Moving Force: The above policies/customs were the moving force behind Plaintiff's procedural/substantive due process violations and related Fourth Amendment harms.

289. Deliberate Indifference: Dauphin County and LVHN/LVHS knew or should have known (and their records show they did know) of these systemic irregularities yet failed to train, supervise, or correct, demonstrating deliberate indifference.

290. Plaintiff seeks compensatory and punitive damages (where available), fees under § 1988, costs, and all appropriate relief.

291. As detailed in ¶¶87–89 above, the practice of admitting individuals on incomplete 302 paperwork and later "covering" defects through backdated signatures and substituted pages demonstrates a policy, custom, or practice at LVHS of disregarding statutory safeguards in the commitment process.

292. Similarly, as described in ¶¶42–43 above, PSP and DCCI permitted Davis to remove and control the original 302 paperwork, reflecting a policy, practice, or custom of allowing officers personally involved in alleged crises to influence, alter, or suppress critical documentation without oversight.

**WHEREFORE**, Plaintiff, Michelle Perfanov, respectfully demands judgment in her favor and against the Defendant(s) named in this Count, and seeks all remedies and damages available and permitted under law, including but not limited to nominal damages, compensatory damages, punitive damages (where permitted), pre-

and post-judgment interest, reasonable attorneys' fees and costs pursuant to 42

U.S.C. § 1988 and any other applicable provisions of law, equitable and declaratory

relief, and all such other relief as this Court deems just, reasonable, and proper.

Respectfully Submitted,

_____
Matthew M. Setley, Esquire
PA. Attorney ID No. 309183
Michael C. Wieder, Esquire
PA Attorney ID No. 310452
BITLER LAW, P.C.
3115 Main Street
Birdsboro, Pennsylvania 19508

Dated: _August 17, 2025_

## VERIFICATION

I, Michelle Perfanov, hereby verify that the statements made in the foregoing
Complaint are true and correct to the best of my knowledge, information, and belief. I
understand that false statements herein are made subject to the penalties of 18 Pa.C.S.
§ 4904, relating to unsworn falsification to authorities.

Date: August 17, 2025

_____
Michelle Perfanov, Plaintiff