**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHELLE PERFANOV** | : | **CIVIL ACTION** |
| | : | |
| | : | |
| **v.** | : | **NO. 25-4772** |
| | : | |
| **COMMONWEALTH OF PENNSYLVANIA, PENNSYLVANIA STATE POLICE, et al.** | : | |
| | : | |

**MEMORANDUM OPINION**

**Henry, J.** **September 22, 2026**

Pending before the Court are the Motions to Dismiss of Defendants Lehigh Valley Health Network, Inc. and Lehigh Valley Hospital – Schuylkill (ECF No. 22); Alex Mercado, M.D. (ECF No. 24); Pennsylvania State Police (ECF No. 32); and County of Dauphin, Dauphin County Department of Mental Health, Autism, and Developmental Programs, Andrea Kepler in her official capacity as Administrator of DCMH, Dauphin County Crisis Intervention Program, Lynn Pascoa in her official capacity as Mental Health Delegate with DCCI, and Laura Van Sickle in her official capacity as a Case Worker with DCCI (ECF No. 33). For the foregoing reasons, the Motions are granted, but Plaintiff is given leave to amend certain causes of action.

## I. BACKGROUND

The facts as set forth in the Complaint (ECF No. 1) (“Compl.”), which the Court must accept as true for the purposes of a motion to dismiss, *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008), are as follows:

In 2023, Plaintiff and Defendant Trooper Ronald Davis,[1] who was employed by Defendant Pennsylvania State Police ("PSP"), entered into a romantic relationship. Compl. ¶¶ 16-18. Around June 2023, Davis told Plaintiff that if she ever left him, he would "paint [her] as crazy." *Id.* ¶ 22. Over time, Plaintiff became fearful of certain demands from Davis that reflected manipulation, surveillance, and an expectation of silence and compliance. *Id.* ¶ 27.

Plaintiff learned that Davis had misrepresented his marital status, as he was legally married. *Id.* ¶ 28. She informed Davis that she was ending her relationship with him on August 20, 2023. *Id.* ¶ 30. Davis responded with anger and stated that he was "in cop mode now." *Id.* ¶ 32. After de-escalating the situation, Plaintiff gathered some personal belongings and left their shared residence, telling Davis that they could discuss a civil separation the next day. *Id.* ¶¶ 34, 36.

On the morning of August 21, Davis locked Plaintiff out of access to her remaining belongings and sent her texts and emails threatening retaliation by leveraging his position in law enforcement. *Id.* ¶¶ 37-38. Plaintiff responded to Davis's messages, including a text message containing "sarcastic replies." *Id.* ¶¶ 39, 45.

At approximately 10:49 a.m. that day, shortly after receiving these texts from Plaintiff, Davis entered PSP Troop H Lykens Station. *Id.* ¶ 41. He found the supervisor on duty and claimed that Plaintiff had threatened suicide and was intellectually disabled and unstable. *Id.* ¶ 44. Troopers at the station instructed Davis to stand down and stated that they would perform a wellness check on Plaintiff at her listed address. *Id.* ¶ 47. Plaintiff was not at her listed address when the troopers arrived. *Id.* ¶ 48. Around midday, Davis stated that there would be "two dead bodies" if Plaintiff was not found and detained, but because he did not want to get in trouble, he sought other troopers to act on his behalf. *Id.* ¶¶ 49-50.

[1] Defendant Davis was served with the Complaint on July 13, 2026 and default has since been entered against him. He moved to vacate default on September 2, 2026, which the Court will address at a later time after giving Plaintiff an opportunity to respond. As such, this Opinion does not address any of the claims regarding Davis.

Davis then called Defendant Dauphin County Crisis Intervention Program ("DCCI"), where he spoke with caseworker Defendant Laura Van Sickle. *Id.* ¶¶ 51-52. Van Sickle completed a Section 302 application on Davis's behalf, apparently without verifying information or reviewing the referenced text conversations between Davis and Plaintiff. *Id.* ¶ 53. The Section 302 application cited text messages from Plaintiff with language referencing dying and indicated that Plaintiff was unable to care for herself and without intervention, "death, serious bodily injury or serious physical debilitation would ensue." *Id.* ¶¶ 54-55. Mental health delegate Defendant Lynn Pascoa reviewed the Section 302 application and issued a warrant authorizing Plaintiff's transport to any local emergency department and, if necessary, any appropriate psychiatric facility. *Id.* ¶ 57. DCCI faxed the Section 302 application and warrant to Lykens Station, and Davis went there to retrieve it. *Id.* ¶ 59.[2] Davis grabbed the paperwork from the fax machine and departed with it, stating that he would "start looking for" Plaintiff himself, even though he was off duty at the time. *Id.* ¶¶ 59-60, 62-63.

Davis enlisted the help of an acquaintance, Kerry Teter, and they went to Weiser State Forest – Greenland Tract, where Plaintiff had indicated earlier that she would be working outdoors. *Id.* ¶ 64. They found Plaintiff seated quietly by a picnic table with her laptop. *Id.* ¶ 65. Davis jumped from Teter's moving vehicle and told Plaintiff that she was coming with him. *Id*. ¶¶ 67-68. Davis grabbed Plaintiff in a wrestling-style hold, lifted her off the ground, carried her several yards, and slammed her against a vehicle. *Id.* ¶¶ 69-70. Plaintiff told Davis she could not breathe, but he proceeded to place her in a chokehold and force her hands behind her back. *Id.* ¶¶ 71-72.

---

[2] The Complaint is unclear as to the timing of Davis's arrival at the Lykens Station. Plaintiff alleges that he arrived there "less than two minutes" after Plaintiff sent him the concerning text message, Compl. ¶ 41, but then later alleges that he went to the station to retrieve the 302 paperwork after DCCI generated and faxed the warrant there, *id.* ¶ 59, which seemingly occurred after Davis received Plaintiff's text message and proceeded to ask PSP troopers to conduct a wellness check on Plaintiff and call DCCI to complete Section 302 paperwork telephonically. The exact timing is not material for the purposes of this Opinion but should be clarified if possible in any amended complaint.

Davis slammed Plaintiff onto the ground, causing her to suffer cracked ribs, a cracked pelvis, injuries to her elbow and knee, and abrasions and contusions to her head and body. *Id.* ¶¶ 74-75. Teter recorded a video of a portion of the encounter, which was later widely disseminated by television and internet media. *Id.* ¶¶ 76, 133.

While continuing to restrain Plaintiff, Davis placed a phone call, stating that Plaintiff was resisting arrest. *Id.* ¶¶ 79-80. Additional PSP troopers arrived within minutes and upon arrival, Trooper Donald Davis searched and handcuffed Plaintiff, hitting her head against the patrol car multiple times. *Id.* ¶¶ 81-82. Plaintiff asked why she was being detained and asked to see a warrant, but her requests were ignored. *Id.* ¶ 84. Plaintiff asked Trooper Giacobbi for an explanation of what was happening, and he said he was not sure. *Id.* ¶ 86. Giacobbi noticed irregularities in Plaintiff's detention and called Corporal Goodman, who arrived at around 2:00 p.m., documented Plaintiff's visible injuries, and reviewed Teter's video. *Id.* ¶¶ 91, 93.

Plaintiff observed Defendant Davis sifting through her belongings at the picnic table. *Id.* ¶ 92. He attempted to search her vehicle, but Plaintiff denied consent for him to do so. *Id.* ¶¶ 94-95. Instead, she allowed Giacobbi to retrieve items she needed from her car. *Id.* ¶¶ 95-96.

PSP Doe Defendants transported Plaintiff to Lehigh Valley Hospital – Schuykill. *Id.* ¶ 99. They told her they were taking her to a different county to protect her because Davis knew too many people in Dauphin County. *Id.* ¶ 100. She arrived at the hospital at approximately 3:32 p.m. *Id.* ¶ 101. At intake, the troopers presented her as a "302," but she denied suicidal ideation and stated that Davis had assaulted her. *Id.* ¶ 102. Hospital staff suggested that there were issues with the warrant and indicated that they would "go outside" to resolve missing pages. *Id.* ¶ 105. At approximately 4:35 p.m., hospital staff contacted DCCI to report the missing pages of the warrant, and DCCI confirmed that Davis had not notified them that Plaintiff was found or otherwise transmitted complete documentation to them. *Id.* ¶ 107. Following these communications, hospital

staff indicated that a "302" would proceed, and at approximately 5:11 p.m., Plaintiff was read rights and signed certain hospital paperwork. *Id.* ¶¶ 112-13. She requested access to her phone and received her first call after 6:30 p.m. *Id.* ¶¶ 114-15.

Hospital notes made at approximately 4:45 p.m. and 5:30 p.m. indicate that the Section 302 packet presented for Plaintiff's admission was incomplete and missing required pages. *Id.* ¶ 109. Hospital staff obtained substitute paperwork and signatures after Plaintiff was detained to attempt to complete the file. *Id.* ¶ 110. Around 6:30 p.m., Davis contacted DCCI stating that he had been overwhelmed and had forgotten to send the rest of the information. *Id.* ¶ 116. He proceeded to transmit the materials. *Id.*

Plaintiff requested evaluation and imaging for her injuries and although nursing staff documented her injuries, she did not meet with a physician that evening. *Id.* ¶¶ 117-18. However, at approximately 7:33 p.m., Defendant Dr. Alex Mercado signed off on medical documentation indicating physical clearance and a need for further mental health evaluation, despite not personally examining her. *Id.* ¶ 119. Later documentation showed that Plaintiff suffered from a rib contusion and internal injury near the kidneys. *Id.* ¶ 121. Plaintiff was held overnight in the emergency room and was denied her requests for showering and wound cleaning. *Id.* ¶ 122. She was eventually transferred to LVHS Adult Behavioral Health. *Id.*

Plaintiff met with a treating physician for the first time on August 23, 2023, to whom she described the events with Davis. *Id.* ¶ 123. She consistently denied suicidal ideation. *Id.* She also told the doctor that a PSP corporal told her that parts of the incident had been handled incorrectly. *Id.* ¶ 124. On August 24, the treating physician changed Plaintiff's status to voluntary commitment, given the absence of suicidal ideation and the irregularities surrounding the 302 process. *Id.* ¶ 126. She was discharged on August 25, 2023. *Id.* ¶ 128. Upon discharge, nursing staff apologized to Plaintiff and stated that injury photographs and records had not been visible in the system but

showed up that afternoon. *Id.* ¶ 129. They also stated that they believed someone at the hospital had interfered with or deleted records because Plaintiff was "dating a cop." *Id.* ¶ 130.

Plaintiff brought suit on August 19, 2025. She asserts the following causes of action against Defendants Commonwealth of Pennsylvania, Pennsylvania State Police ("PSP"); County of Dauphin; PSP Trooper Ronald Keith Davis, individually and in his capacity as a PSP Trooper; Dauphin County Department of Mental Health, Autism, and Developmental Programs ("DCMH"); Andrea Kepler, in her official capacity as Administrator of DCMH; Dauphin County Crisis Intervention Program ("DCCI"); Lynn Pascoa, in her official capacity as Mental Health Delegate with DCCI; Laura Van Sickle, in her official capacity as a Case Worker with DCCI; Lehigh Valley Health Network, Inc. ("LVHN"); Lehigh Valley Hospital – Schuylkill ("LVHS"); Alex Mercado, M.D., in his capacity as an Attending Emergency Room Doctor at LVHS; and John Does 1-15 as their official capacity as PSP Troopers:

- Count I – Violation of Plaintiff's Rights Pursuant to the Fourth and Fourteenth Amendments to the U.S. Constitution, Unreasonable Seizure of Plaintiff's Person and Deprivation of Liberty Without Probable Cause or Due Process of Law (against Davis, PSP, and PSP Doe 1-15 Defendants);

- Count II – Violation of Plaintiff's Rights Pursuant to the Fourth and Fourteenth Amendments to the U.S. Constitution, Abuse of Process (against Davis and PSP);

- Count III – Violation of Plaintiff's Rights Pursuant to the Fourth and Fourteenth Amendments to the U.S. Constitution, Unreasonable Seizure of Plaintiff's Person and Deprivation of Liberty Without Probable Cause or Due Process of Law (against DCMH, DCCI, Kepler, Pascoa, and Van Sickle);

- Count IV – Violation of Plaintiff's Rights Pursuant to the Fourteenth Amendment to the U.S. Constitution, Deprivation of Liberty Without Due Process of Law (against LVHN., LVHS, and Mercado);

- Count V – Civil Conspiracy to Violate Plaintiff's Civil Rights Under the United States Constitution (against all Defendants);

- Count VI – Violation of Plaintiff's Rights Pursuant to the Fourth and Fourteenth Amendments to the U.S. Constitution, *Monell* Action (against Dauphin County);

- Count VII – Assault and Battery (against Davis);

- Count VIII – Violation of Plaintiff's Rights Pursuant to Article I, § 1, Deprivation of Plaintiff's Right to Reputation (against all Defendants);
- Count IX – Defamation (against Davis);
- Count X – Violation of the Fourteenth Amendment (42 U.S.C. § 1983) Procedural and Substantive Due Process – Unlawful Deprivation of Liberty (against Davis, PSP, PSP Doe 1-15, Dauphin County, DCMH, DCCI, Kepler, Pascoa, Van Sickle, LVHN, LVHS, and Mercado);
- Count XI – Violation of the Fourteenth Amendment (42 U.S.C. § 1983) Deprivation of Liberty Based on Fabricated Evidence (against Davis, PSP Doe 1-15, DCCI, Pascoa, Van Sickle, LVHN, LVHS, and Mercado);
- Count XII – Violation of the Fourteenth Amendment (42 U.S.C. § 1983) State Created-Danger (against Davis, PSP Doe 1-15, DCCI, Kepler, Pascoa, and Van Sickle);
- Count XIII – Common Law Fraud/Fraudulent Misrepresentation and Concealment (against Davis, DCCI, Pascoa, Van Sickle, LVHN, LVHS, and Mercado); and
- Count XIV – Municipal/Policy-and-Custom Liability (42 U.S.C. § 1983) Monell-Type Claims – Policy, Custom, or Practice Causing Due Process/Seizure Violations (against Dauphin County, LVHN, and LVHS.

## II. LEGAL STANDARD

Motions to dismiss are governed by Federal Rule of Civil Procedure 12. Relevant here are motions to dismiss for lack of subject-matter jurisdiction, insufficient service of process, and failure to state a claim upon which relief can be granted.

Rule 12(b)(1) allows a court to dismiss an action for lack of subject-matter jurisdiction. A Rule 12(b)(1) motion to dismiss may be either facial or factual. A jurisdictional attack is facial if it "challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'" *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n. 3 (3d Cir. 2006)). A factual challenge, on the other hand, "attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise

present[ing] competing facts.'" *Id.* (*quoting Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)).

A court may dismiss a case for insufficient service of process pursuant to Rule 12(b)(5) if the plaintiff fails to serve a defendant with a summons and a copy of the complaint within 90 days of filing the complaint. "[T]he court must dismiss the case without prejudice or order that the plaintiff serve the defendant within a specified time, absent good cause for that failure." *Huerta v. Green, Tweed & Co.*, No. 18-cv-1776, 2019 WL 13273155, at *2 (E.D. Pa. Feb. 15, 2019).

If a plaintiff fails to state a claim upon which relief can be granted, the court may dismiss the action pursuant to Rule 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. The Third Circuit has set forth a three-step analysis for Courts to apply in analyzing a motion to dismiss: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

## III. ANALYSIS

### a. Pennsylvania State Police

Plaintiff asserts against PSP causes of action for Violation of Plaintiff's Rights Pursuant to the Fourth and Fourteenth Amendment to the U.S. Constitution for Unreasonable Seizure of Plaintiff's Person and Deprivation of Liberty Without Probable Cause or Due Process of Law

(Count I); Violation of Plaintiff's Rights Pursuant to the Fourth and Fourteenth Amendments to the U.S. Constitution for Abuse of Process (Count II); Civil Conspiracy to Violate Plaintiff's Civil Rights Under the United States Constitution (Count V); Violation of Plaintiff's Rights Pursuant to Article I, § I of the Pennsylvania Constitution for Deprivation of Plaintiff's Right to Reputation (Count VIII); and Violation of the Fourteenth Amendment (42 U.S.C. § 1983) Procedural and Substantive Due Process – Unlawful Deprivation of Liberty (Count X).

PSP moves to dismiss the Complaint as against it for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6). *See* ECF No. 32 ("PSP Mot."). As for lack of subject matter jurisdiction, PSP argues that the Eleventh Amendment to the United States Constitution immunizes state agencies from claims brought pursuant to 42 U.S.C. § 1983 in federal courts. *Id.* at 6. Plaintiff does not dispute PSP's immunity from claims seeking monetary damages. *See* ECF No. 34 ("Opp. to PSP Mot.") at 5.

The Eleventh Amendment to the United States Constitution immunizes states from suit for damages in federal courts, and such immunization has been extended to entities that act as "arms of the state." *Maliandi v. Montclair State Univ.*, 845 F.3d 77, 83 (3d Cir. 2016). It is well settled that "[t]he Pennsylvania State Police is an arm of the Commonwealth of Pennsylvania," so plaintiffs may only seek injunction against them. *Frein v. Pennsylvania State Police*, 47 F.4th 247, 257 (3d Cir. 2022). Therefore, because the Eleventh Amendment acts as "a jurisdictional bar against individuals bringing suit against a state or its agencies in federal court," *see Durham v. Kelley*, 82 F.4th 217, 227 (3d Cir. 2023), and Plaintiff does not appear to seek any injunctive relief from PSP at this point in time, Counts I, II, V, and X are dismissed against PSP without prejudice, *see Mohn v. United States*, No. 23-1023, 2023 WL 4311609, at *2 (3d Cir. July 3, 2023) (holding

that dismissal for lack of subject-matter jurisdiction "should be without prejudice."). She is granted leave to amend to the extent she seeks to set forth claims for injunctive relief.

As for Plaintiff's claim for violation of the Pennsylvania Constitution with respect to her reputation, PSP argues that there is no private cause of action for monetary damages based on a violation of the Pennsylvania Constitution. PSP Mot. at 7. Plaintiff does not appear to dispute this. Courts routinely hold that there is no private cause of action for damages under the Pennsylvania Constitution, *see Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 F. App'x 681 (3d Cir. 2011), so Count VIII is dismissed as against PSP with prejudice.

**b. Lehigh Valley Health Network and Lehigh Valley Hospital – Schuylkill**

Plaintiff asserts against Defendants LVHN and LVHS (together, the "LVH Defendants") causes of action for Violation of Plaintiff's Rights Pursuant to the Fourteenth Amendment to the U.S. Constitution, Deprivation of Liberty Without Due Process of Law (Count IV); Civil Conspiracy to Violate Plaintiff's Civil Rights Under the United States Constitution (Count V); Violation of Plaintiff's Rights Pursuant to Article I, § 1, Deprivation of Plaintiff's Right to Reputation (Count VIII); Violation of the Fourteenth Amendment (42 U.S.C. § 1983) Procedural and Substantive Due Process – Unlawful Deprivation of Liberty (Count X); Violation of the Fourteenth Amendment (42 U.S.C. § 1983) Deprivation of Liberty Based on Fabricated Evidence (Count XI); Common Law Fraud/Fraudulent Misrepresentation and Concealment (Count XIII); and Municipal/Policy-and-Custom Liability (42 U.S.C. § 1983) Monell-Type Claims – Policy, Custom, or Practice Causing Due Process/Seizure Violations (Count XIV).

On January 23, 2026, the LVH Defendants and Plaintiff stipulated to dismiss Plaintiff's request for monetary damages for violation of her civil rights under the Pennsylvania Constitution, Count VIII. *See* ECF No. 38. The Court adopts that stipulation and dismisses that cause of action without prejudice to Plaintiff's right to seek non-monetary relief in an amended complaint.

The LVH Defendants move to dismiss the Complaint as against them for failure to state a claim. *See* ECF Nos. 22, 23 ("LVH Mot."). They first argue that Counts IV, X, XI, and XIV should be dismissed because, as private healthcare providers, they are not state actors and cannot be held liable under 42 U.S.C. § 1983. *Id.* at 4-8. Each of these Counts appear to be brought pursuant to Section 1983, the vehicle by which individuals may bring federal constitutional claims in federal court.[3] To bring a claim under Section 1983, a plaintiff must show "that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury." *Karns v. Shanahan*, 879 F.3d 504, 520 (3d Cir. 2018) (internal quotation omitted). There are three tests to determine whether an otherwise private entity has acted under color of law: "(1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (alterations and internal quotations omitted).

Counts IV, X, XI, and XIV allege against the LVH Defendants deficiencies in Plaintiff's involuntary commitment under Pennsylvania's Mental Health Procedures Act ("MHPA"),[4] leading to deprivation of her Constitutional rights. Because they are brought pursuant to Section 1983, each of these Counts turn on whether the LVH Defendants are state actors. To the extent

[3] Although not specifically named as being brought pursuant to Section 1983, Count IV alleges that "LVHS and Dr. Mercado became state actors for § 1983 purposes by willfully participating in the Section 302 commitment process with county and PSP personnel, accepting and using county-issued paperwork known to be incomplete or irregular, and continuing Plaintiff's detention on the strength of that state process rather than independent clinical findings." Compl. ¶ 195. As such, Count IV will be analyzed as a Section 1983 claim.

[4] Section 302 of the MHPA "allows involuntary commitment of a person for emergency psychiatric examination for up to 120 hours, where 'reasonable grounds [exist] to believe that [the person] is severely mentally disabled and in need of immediate treatment.'" *Paciulete v. Fahn*, No. 25-cv-4896, 2025 WL 2917747, at *6 (E.D. Pa. Oct. 10, 2025) (quoting 50 Pa. Stat. and Const. Stat. § 7302(a)) (alterations in original).

plaintiff seeks to argue that the MHPA compels action by the hospital, making a hospital by necessity a state actor, that theory has been rejected in the Third Circuit. *See Carver v. Plyer*, 115 Fed. App'x 532, 539 (3d Cir. 2004) (holding that, under the MHPA, "the actual determination of whether treatment is necessary is sufficiently discretionary so as not to compel any particular action," so the hospital in that case was not compelled by the MHPA to commit the plaintiff and was therefore not considered a state actor); *see also Covell v. Smith*, No. 95-cv-0501, 1996 WL 750033, at *6 (E.D. Pa. Dec. 30, 1996) ("Courts have held that private health care facilities and physicians acting under the provisions of the MHPA are not state actors for purposes of § 1983.").

Plaintiff's primary argument seems to be that the LVH Defendants became state actors through their "coordinated activity" with "PSP troopers, including reliance on fabricated paperwork, acceptance of custody from armed officers despite knowing the 302 was defective, and refusal to release Plaintiff after discovering the defects." *See* ECF No. 26 ("Opp. to. LVH Mot.") at 3. The Third Circuit has recognized that a hospital may become a state actor if there is evidence that the hospital "conspired with police to detain and force treatment on" a plaintiff. *See Carver*, 115 Fed. App'x at 538. But to state a claim that a hospital conspired with state actors and thus should itself be treated as a state actor, a plaintiff must make factual allegations sufficient to "support a claim that hospital employees reached an understanding with the other [state defendants] to deny Plaintiff [her] rights or that they acted in 'willful concert' with [state defendants]." *See Wnek v. City of Philadelphia*, No. 05-cv-3065, 2006 WL 1804567, at *2 (E.D. Pa. June 28, 2006); *see also Brookhart v. Rohr*, 385 Fed. App'x 67, 69 (3d Cir. 2010) ("Liability would attach if a private party conspired with a state actor . . . but the District Court properly concluded that the vague allegations of a conspiracy to defraud [the plaintiff] of his property did not satisfy the plausibility standard of Rule 12(b)(6).").

Here, Plaintiff has not alleged with the requisite particularity that there was some sort of understanding reached between the LVH Defendants and the PSP so as to convert the LVH Defendants into state actors. For that reason, Plaintiff's Section 1983 claims, Counts IV, X, XI, and XIV, are dismissed because she has not sufficiently alleged that the LVH Defendants are state actors.[5]

The LVH Defendants next argue that Count V, which asserts a cause of action for civil conspiracy, should be dismissed because it does not sufficiently plead the requisite elements of civil conspiracy. LVH Mot. at 10. In Count V, Plaintiff alleges that "[a]ll Defendants acted with a common purpose, namely, to violate the constitutional rights of Plaintiff in effecting the unlawful and unreasonable seizure of her person and the unlawful deprivation of Plaintiff's liberty without

---

[5] In addition to arguing that these constitutional claims should be dismissed because they are not state actors, the LVH defendants argue that Counts IV, X, XI, and XIV should be dismissed as against the LVH Defendants because Plaintiff has not provided an appropriate Certificate of Merit. LVH Mot. at 11-13. They argue that these causes of action, even though styled as constitutional violations, substantively pursue professional liability against the LVH defendants and therefore require a Certificate of Merit pursuant to Pennsylvania Rule of Civil Procedure 1042.3. *Id.* Plaintiff responds that she has not alleged "misdiagnosis," "deviation from medical standard of care," "improper evaluation," or "negligent clinical judgment," and instead alleges "unlawful detention," "unconstitutional seizure," "abuse of legal process," "falsification and concealment of defects in a 302 petition," and "willful participation in a retaliatory police action." Opp. to LVH Mot. at 4-5.

"[T]o determine whether a claim involves medical malpractice, a court must ask: (1) whether the claim pertains to an action that occurred within the course of a professional relationship; and (2) whether the claim raises questions of medical judgment beyond the realm of common knowledge and expertise. Answering both these questions affirmatively means that the claim involves medical malpractice and requires a certificate of merit." *Ferencz v. Medlock*, 905 F. Supp. 2d 656, 674 (W.D. Pa. 2012) (internal quotations and citations omitted). The parties have not informed the Court of any cases in which causes of action styled as civil rights violations were treated as state law medical malpractice claims pursuant to this test. Although the Court declines to rule at this point whether Plaintiff's constitutional claims sound in medical malpractice, the parties should consider the test for medical malpractice in any future pleadings.

Similarly, the LVH Defendants argue that Plaintiff's claims against the LVH defendants should be dismissed because they are immunized under the Mental Health Procedures Act. LVH Mot. at 13-15. Specifically, they argue that "Plaintiff's claims, while alleging to be constitutional in nature, are in fact plain negligence claims," and the MHPA immunizes authorized participants in a person's examination or treatment under the MHPA from civil or criminal liability "[i]n the absence of willful misconduct or gross negligence." *Id.* at 13. At this point, considering that Plaintiff is granted leave to amend her complaint to address whether the LVH Defendants are state actors, I decline to determine whether Plaintiff's constitutional claims should be converted to state-law negligence claims for the purpose of determining MHPA immunity.

probable cause or due process of law through the involuntary mental health commitment of Plaintiff." Compl. ¶ 207.

To the extent Plaintiff intends to bring this civil conspiracy claim pursuant to Section 1983, it is dismissed for the same reason as her other Section 1983 claims against the LVH Defendants, as she has not sufficiently alleged that they are state actors. To the extent she intends to bring a state-law civil conspiracy claim, she similarly does not succeed. "In Pennsylvania, to state a cause of action for civil conspiracy, the following elements are required: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." *Dennis v. DeJong*, 867 F. Supp. 2d 588, 657 (E.D. Pa. 2011). "Proof of malice or an intent to injure is essential to the proof of a conspiracy." *Id.* Plaintiff has not alleged that LVH Defendants acted with malice or an intent to injure her, and therefore, her civil conspiracy claim as against them will fail at this stage.

Finally, the LVH Defendants submit that Count XIII should be dismissed for failure to meet the pleading standard. LVH Mot. at 10-11. Count XIII is a claim for common law fraud and fraudulent misrepresentation and concealment. Plaintiff alleges that the LVH Defendants had "knowledge of missing page(s) and a not fully valid 302" but "nevertheless treated the packet as valid and represented to staff that the legal requisites were met, while omitting the known irregularities and proceeding to hold Plaintiff." Compl. ¶ 279. The LVH Defendants argue that this claim must be dismissed because Plaintiff has not alleged that she was induced into detrimental reliance. LVH Mot. at 10.

"To succeed in a fraud cause, a plaintiff must establish the following elements: '(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another

into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.'" *Townsend v. City of Chester*, No. 19-cv-1023, 2020 WL 4347368, at *11 (E.D. Pa. July 29, 2020) (quoting *Gruenwald v. Advanced Comput. Applications, Inc.*, 730 A.2d 1004, 1014 (Pa. Super. Ct. 1999)). "A plaintiff cannot state a claim for fraud based on a third party's reliance on a misrepresentation, even when it was made to influence the third party foreseeably to act in a manner detrimental to the plaintiff." *Westwood-Booth v. Davy-Loewy Ltd.*, No. 97-cv-7539, 1999 WL 219897, at *4 (E.D. Pa. Apr. 13, 1999).

Plaintiff argues that she has alleged justifiable reliance because "she alleges LVH Defendants relied on, adopted, and weaponized falsified information to unlawfully detain her." Opp. to LVH Mot. at 4. This is insufficient to state a claim for fraud, as she does not allege that *she* was the one to detrimentally rely on any representation by LVH, but rather that "DCCI relied on Davis; PSP relied on DCCI; LVHS/Mercado relied on the packet and Davis's narrative; the chain reaction caused Plaintiff's seizure and detention." Compl. ¶ 281. She therefore has not stated a claim for fraud, and Count XIII is dismissed as to the LVH defendants.

**c. Mercado**

Plaintiff asserts claims against Mercado for Violation of Plaintiff's Rights Pursuant to the Fourteenth Amendment to the U.S. Constitution, Deprivation of Liberty Without Due Process of Law (Count IV); Civil Conspiracy to Violate Plaintiff's Civil Rights Under the United States Constitution (Count V); Violation of Plaintiff's Rights Pursuant to Article I, § 1, Deprivation of Plaintiff's Right to Reputation (Count VIII); Violation of the Fourteenth Amendment (42 U.S.C. § 1983) Procedural and Substantive Due Process – Unlawful Deprivation of Liberty (Count X); Violation of the Fourteenth Amendment (42 U.S.C. § 1983) Deprivation of Liberty Based on Fabricated Evidence (Count XI); and Common Law Fraud/Fraudulent Misrepresentation and Concealment (Count XIII).

In his Motion to Dismiss, Mercado first argues that the case should be dismissed as against him pursuant to Rule 12(b)(5) for insufficient service of process. *See* ECF No. 24 ("Mercado Mot.") at 8-11. Federal Rule of Civil Procedure 4(e) provides that an individual may be served by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
>> (A) delivering a copy of the summons and of the complaint to the individual personally;
>>
>> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>>
>> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e). Under Pennsylvania law, process on an individual may be served:

> (1) by handing a copy to the defendant; or
>
> (2) by handing a copy
>
>> (i) at the residence of the defendant to an adult member of the family with whom he resides; but if no adult member of the family is found, then to an adult person in charge of such residence; or
>>
>> (ii) at the residence of the defendant to the clerk or manager of the hotel, inn, apartment house, boarding house or other place of lodging at which he resides; or
>>
>> (iii) at any office or usual place of business of the defendant to his agent or to the person for the time being in charge thereof.

Pa. R. Civ. P. 402.

Here, Plaintiff filed a certificate of service as to Mercado on October 21, 2025. *See* ECF No. 6. The certificate indicates that a process server served the summons upon a registered nurse at LVHS. *Id*. Mercado argues that this attempt at service does not constitute proper service of process because the nurse was not authorized to accept service on his behalf, and he has not

otherwise been served with a copy of the Complaint. Mercado Mot. at 9. He mentions that his counsel contacted Plaintiff's counsel via email on October 29, 2025, stating that Mercado had not been served and offering to accept service on his behalf. *Id.* at 9, Ex. D. In that email, counsel for Mercado asks Plaintiff's counsel to serve her with a copy of the Complaint. *Id.* at Ex. D. According to Mercado, Plaintiff's counsel did not respond to his counsel's offer to accept service on his behalf.

In opposition, Plaintiff says that "any alleged service deficiencies are now fully cured, as undersigned counsel will accepted [sic] Defendant's counsel's offer to accept service on behalf of Dr. Mercado and therefore proper service will be manifested accordingly," ECF No. 27 ("Opp. to Mercado Mot.") at 1, seemingly not disputing that her attempted service on Mercado via the nurse at LVHS was improper. But to the extent Plaintiff asserts that Mercado's counsel accepted service, she has not provided evidence of such acceptance. The fact that Mercado's counsel offered to accept service if Plaintiff were to serve her with a copy of the Complaint is insufficient without some proof that his counsel was actually served. I therefore cannot hold at this time that service upon Mercado was proper, and I therefore must dismiss the claims against him unless Plaintiff establishes that service was timely effected upon Mercado or shows good cause exists for an extension of time to serve the Complaint upon him.[6]

**d. Dauphin County Defendants**

Plaintiff asserts the following causes of action against the Dauphin County Defendants: Violation of Plaintiff's Rights Pursuant to the Fourth and Fourteenth Amendments to the U.S. Constitution, Unreasonable Seizure of Plaintiff's Person and Deprivation of Liberty Without

[6] I will reserve a decision on the merits of the claims against Mercado until such time as any claims are reasserted against him. To the extent Plaintiff seeks to reassert claims against Mercado, I note that many of the claims against him in the present Complaint overlap with those asserted against the LVH Defendants, as do many of their asserted reasons for moving to dismiss the present Complaint. Plaintiff should consider the current pleading deficiencies as against the LVH Defendants in making any amendments to her claims against Mercado.

Probable Cause or Due Process of Law (Count III) (against DCMH, DCCI, Kepler, Pascoa, and Van Sickle); Civil Conspiracy to Violate Plaintiff's Civil Rights Under the United States Constitution (Count V) (against Dauphin County, DCMH, DCCI, Kepler, Pascoa, and Van Sickle); Violation of Plaintiff's Rights Pursuant to the Fourth and Fourteenth Amendments to the U.S. Constitution, *Monell* Action (Count VI) (against Dauphin County); Violation of Plaintiff's Rights Pursuant to Article I, § 1, Deprivation of Plaintiff's Right to Reputation (Count VIII) (against Dauphin County, DCMH, DCCI, Kepler, Pascoa, and Van Sickle); Violation of the Fourteenth Amendment (42 U.S.C. § 1983) Procedural and Substantive Due Process – Unlawful Deprivation of Liberty (Count X) (against Dauphin County, DCMH, DCCI, Kepler, Pascoa, and Van Sickle); Violation of the Fourteenth Amendment (42 U.S.C. § 1983) Deprivation of Liberty Based on Fabricated Evidence (Count XI) (against DCCI, Pascoa, and Van Sickle); Violation of the Fourteenth Amendment (42 U.S.C. § 1983) State Created-Danger (Count XII) (against DCCI, Kepler, Pascoa, and Van Sickle); Violation of the Fourteenth Amendment (42 U.S.C. § 1983) Deprivation of Liberty Based on Fabricated Evidence (Count XI); Common Law Fraud/Fraudulent Misrepresentation and Concealment (Count XIII) (against DCCI, Pascoa, and Van Sickle); and Municipal/Policy-and-Custom Liability (42 U.S.C. § 1983) Monell-Type Claims – Policy, Custom, or Practice Causing Due Process/Seizure Violations (Count XIV) (against Dauphin County).

As an initial matter, Defendants DCMH and DCCI contend that they are not separate legal entities from Dauphin County, but are instead, "respectively, a department of Dauphin County and a services program administered by said department." *See* ECF No. 33 ("Dauphin Mot.") at 9. It is indeed well settled that county agencies do not have legal existence apart from the county itself and cannot be sued separately from the county. *See, e.g.*, *Cohen v. Chester Cnty. Dep't of Mental Health/Intell. Disabilities Servs.*, No. 15-cv-5285, 2016 WL 3031719, at *4 (E.D. Pa. May 25,

2016). Plaintiff does not oppose dismissal of these entities. *See* ECF No. 35 ("Opp. to Dauphin Mot.") at 2. Therefore, all claims against DCMH and DCCI are dismissed with prejudice.

Similarly, Defendants Kepler, Pascoa, and Van Sickle argue that claims against them should be dismissed as they are sued solely in their official capacities and any claims against them therefore "are equivalent to claims against the County itself." Dauphin Mot. at 11. Plaintiff also does not oppose such dismissal. Opp. to Dauphin Mot. at 2-3. All claims against Defendants Kepler, Pascoa, and Van Sickle in their official capacities are thus dismissed with prejudice.

Counts III, XI, XII, and XIII were asserted against some combination of DCMH, DCCI, Kepler, Pascoa, and Van Sickle, but not against Dauphin County itself. Because those Defendants have been dismissed, the claims against them that were not also brought against Dauphin County are dismissed as well. To the extent Plaintiff wishes to reassert those claims against Dauphin County as the proper Defendant, she may do so in an amended complaint.

Like many of the other Defendants in this case have argued, Dauphin County asserts that Count VIII of the Complaint should be dismissed, as there is no private right of action for monetary damages under the Pennsylvania Constitution. As previously held *supra*, Count VIII is dismissed as against Dauphin County. Thus, the only remaining claims in this Complaint as against Dauphin County are Counts V, VI, X, and XIV.

In Count V, Plaintiff asserts a civil conspiracy claim against all Defendants. She alleges that "[a]ll Defendants acted with a common purpose, namely, to violate the constitutional rights of Plaintiff in effecting the unlawful and unreasonable seizure of her person and the unlawful deprivation of Plaintiff's liberty without probable cause or due process of law," Compl. ¶ 207, and specifically that Dauphin County agents and employees, including DCMH, DCCI, Kepler, Pascoa, and Van Sickle "took affirmative steps to further this conspiracy by completing the 302 Application and the Warrant issued thereupon by relying solely on the misrepresentations and false

statements of Davis without any support provided at the time of issuance," *id.* ¶ 209, and "by failing to amend, rescind, properly verify, or cancel the Warrant upon discovery of the lack of support in the misrepresented text messages to have Plaintiff involuntarily committed," *id.* ¶ 210.

"To prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law 'reached an understanding' to deprive him of his constitutional rights." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 293-94 (3d Cir. 2018) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150-52 (1970)). Plaintiff does not allege any such agreement between Dauphin County and any of the other Defendants, so she has not plausibly stated a claim for civil conspiracy under Section 1983. Similarly, to the extent Plaintiff seeks to assert a state law civil conspiracy claim against Dauphin County, it fails for the same reason it failed against the other Defendants, as she has not pled "[p]roof of malice or an intent to injure." *Dennis*, 867 F. Supp. 2d at 657.

Counts VI, X, and XIV all assert claims against Dauphin County for violation of Plaintiff's constitutional rights, based on a theory of municipal liability pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). In Count VI, Plaintiff alleges that Dauphin County is liable under Section 1983 for deprivation of Plaintiff's Fourth and Fourteenth amendment rights due to its "established custom, practice, or policy in failing to require its agents, employees, or representatives to confirm, verify, or corroborate the information collected," *see* Compl. ¶ 220, and its "established custom, practice, or policy in allowing its agents, employees, or representatives to approve warrants on Section 302 applications where the agent, employee, or representatives has [sic] not confirmed, verified, or corroborated the information provided in support of the application," *id.* ¶ 221.

In Count X, Plaintiff alleges that Dauphin County violated her due process rights guaranteed by the MHPA, in relevant part, when "DCCI allow[ed] Van Sickle to sign for Davis as

'Section A' even though Pottsville records later mischaracterized it as 'police Box B,' indicating foundational irregularity and confusion at the outset," *id.* ¶ 249(a)(a), and when "county actors rubber-stamped [Davis's] account without verification," *id.* ¶ 250. She alleges that "Defendants each knew, or were deliberately indifferent to, the obvious risk that proceeding on an incomplete/invalid 302 and ex-boyfriend's unverified claims would unlawfully deprive Plaintiff of liberty" and that "DCCI . . . admitted awareness of irregularities." *Id.* ¶ 255.

In Count XIV, Plaintiff alleges that Dauphin County had a policy or custom of "[t]elephone-by-report 302s accepted from biased/non-neutral parties (here, an off-duty ex-boyfriend trooper) without verification," "'[s]igning for' third parties (Van Sickle for Davis) to push applications through without personal knowledge," "[r]ubber-stamping Warrants despite lack of clear and present danger," and "[n]on-local transports outside customary designated facilities, undermining statutory safeguards." *Id.* ¶ 286. Plaintiff further alleges that those policies and/or customs "were the moving force behind Plaintiff's procedural/substantive due process violations and related Fourth Amendment harms," *id.* ¶ 288, and that "Dauphin County . . . knew or should have known (and their records show they did know) of these systemic irregularities yet failed to train, supervise, or correct, demonstrating deliberate indifference," *id.* ¶ 289.

"[T]o state a claim under *Monell*, a plaintiff must establish that: (1) the municipality had a policy or custom that deprived the plaintiff of his constitutional rights; (2) the municipality acted deliberately and was the moving force behind the deprivation; and (3) the plaintiff's injuries were caused by the identified policy or custom." *Simpson v. Ferry*, 202 F. Supp. 3d 444, 452 (E.D. Pa. 2016). The plaintiff must "specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). They must also identify the policymaker or decisionmaker responsible for the unlawful conduct alleged. *See Wood v. Williams*, 568 Fed. App'x 100, 104 (3d Cir. 2014) (holding that district court below properly dismissed *Monell* claim

where plaintiff did not identify a policymaker or decisionmaker responsible for the alleged misconduct).

Dauphin County first argues that Plaintiff's *Monell* claims must be dismissed because she has failed to identify a policy or custom. Dauphin Mot. at 16. Instead, Dauphin County says, Plaintiff "attempts to assert that the absence of certain requirements in an unspecified policy resulted in the claimed violation," but absences of a policy "cannot be deemed a moving force behind a constitutional violation." *Id.* at 17. The County further argues that Plaintiff "has failed to offer any support for her assertion that the County has a permanent and well-settled practice of failing to verify information prior to issuing warrants," instead referring to a "laundry list of grievances" and "regurgitat[ing] the standard for municipal liability under Section 1983." *Id.* at 17-18.

In opposition, Plaintiff argues that she sufficiently alleges that "County-level practices and customs governing involuntary mental health commitments caused the constitutional deprivation," in that the Complaint alleges that Dauphin County maintained customs and practices of "[a]ccepting involuntary commitment applications initiated by biased or interested parties without meaningful verification;" "[p]ermitting 'telephone-by-report' applications without corroboration of suicidal ideation or imminent danger;" "[i]ssuing warrants without ensuring that statutorily required documentation is complete and valid;" "[a]llowing involuntary commitments to proceed despite known defects in paperwork and process;" and "[t]reating missing or defective commitment paperwork as a routine administrative issue rather than a constitutional barrier to confinement." Opp. to Dauphin Mot. at 3-4. Because she alleges "more than a single mistake" and she is "not required to catalogue other victims or prove the full scope of the practice," Plaintiff contends, she has sufficiently alleged a municipal policy or custom. *Id.* at 4-5.

Plaintiff does not appear to assert that there is some sort of "affirmative or otherwise formally-approved 'proclamation, policy, or edict' regarding" Dauphin County's practices in Section 302 procedures. *See Simpson*, 202 F. Supp. 3d at 452 (internal citation omitted). Rather, she appears to proceed on a "custom" theory—that Dauphin County had a practice "'that has not been formally approved by an appropriate decisionmaker,' but that is 'so widespread as to have the force of law.'" *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir.2003) (quoting *Bd. of the Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 417 (1997)).

I hold that Plaintiff has not sufficiently alleged a custom, as all of her allegations relate to a single incident and do not show that the practice was so widespread as to have the force of law, rather than merely making the county liable on a *respondeat superior* liability theory. Indeed, for a municipality to be liable, the "practice of constitutional violations [must be] so widespread that a municipality could not plausibly be ignorant of the likelihood of future constitutional violation." *Peters v. Cmty. Educ. Ctrs., Inc.*, No. 11-cv-850, 2014 WL 981557, at *7 (E.D. Pa. Mar. 13, 2014). As such, objectionable behavior occurring during a single incident "alone is insufficient to put a municipality on notice of the existence of a widespread custom." *Id.* In her Complaint, Plaintiff merely alleges that, during her Section 302 process, Dauphin County agencies did not require their employees to confirm collected information and allowed employees to approve warrants without confirming information. That is not enough to establish that such practices—however objectionable—constituted a widespread custom within the county.

Plaintiff also has not identified an official with final policymaking authority who promulgated a policy or acquiesced in unconstitutional conduct. Dauphin Mot. at 16. Dauphin County submits that Plaintiff appears to assert that Andrea Kepler, the administrator of DCMH, qualifies as a policymaker. Mot. at 16. Dauphin County argues that she cannot be considered a

final policymaker because "[a]dministrators of . . . county-level programs are not empowered by statute to promulgate policies." *Id.* at 16-17.

Plaintiff's Complaint also does not clearly identify who she believes to be the policymaker connected to the custom at issue and whether that policymaker had knowledge of and acquiesced to the custom. *See Wyche v. City of Philadelphia*, No. 15-cv-3900, 2016 WL 6442004 (E.D. Pa. Oct. 31, 2016) ("[A] complaint falls short when it does not allege 'proof of knowledge and acquiescence by the decisionmaker.'"). Plaintiff should be sure to identify any relevant policymaker in her amended complaint.

Similarly, to the extent Plaintiff attempts to allege *Monell* liability on a failure to train or supervise basis, she has not done so. To state a claim for failure to train, Plaintiff must allege that "the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Carter v. City of Philadelphia,* 181 F.3d 339, 357 (3d Cir. 1999) (citing *City of Canton v. Harris,* 489 U.S. 378, 388 (1989)). To plead deliberate indifference, a plaintiff must allege that "'(1) municipal policymakers know that employees will confront a particular situation[,] (2) the situation involves a difficult choice or a history of employees mishandling[,] and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights.'" *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Doe v. Luzerne County*, 660 F.3d 169, 180 (3d Cir. 2011)). Plaintiff has not pled the requisite knowledge of a municipal policymaker, so her failure to train claim fails for now as well. Counts VI, X, and XIV as against Dauphin County alleging municipal liability are therefore dismissed without prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Motions to Dismiss are granted. An appropriate Order follows.